*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KARKOUKLI'S, INC.,

      *Plaintiff-Appellant,*

      *v.*

C. HUGH DOHANY, Oakland County Treasurer, and
WATERFORD TOWNSHIP,

      *Defendants-Appellees.*

No. 04-1237

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74892—Patrick J. Duggan, District Judge.

Argued: March 17, 2005

Decided and Filed: May 17, 2005

Before: MERRITT and ROGERS, Circuit Judges; HOOD, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard E. Shaw, HAMOOD & FERGESTROM, Troy, Michigan, for Appellant. Donald F. Slavin, OAKLAND COUNTY PROSECUTOR'S OFFICE, Pontiac, Michigan, Michael L. Updike, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellees. **ON BRIEF:** Richard E. Shaw, HAMOOD & FERGESTROM, Troy, Michigan, for Appellant. Donald F. Slavin, OAKLAND COUNTY PROSECUTOR'S OFFICE, Pontiac, Michigan, Gerald A. Fisher, Mark S. Roberts, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellees.

---

## OPINION

---

     MERRITT, Circuit Judge. Plaintiff Karkoukli's, Inc. ("Karkoukli's") appeals the District Court's summary judgment in favor of defendants in this 42 U.S.C. § 1983 case involving Oakland County, Michigan's foreclosure sale of real property due to Karkoukli's delinquency in paying property taxes. The only issue on appeal is whether defendants' efforts to serve notice on plaintiff,

---

[*] The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

regarding the foreclosure, tax sale and period for redemption, were constitutionally adequate. For the reasons set forth below, we affirm.

## SUMMARY OF FACTS

Karkoukli's, Inc., a Michigan corporation formed in 1996, owned and operated a Big Boy restaurant on property known as 20 South Telegraph Road in Waterford Township, Michigan ("Lot 20"). In 1999, the company purchased an adjacent lot, known as 6 South Telegraph Road ("Lot 6") with the intention of demolishing the existing structures on both lots and building a combined restaurant, gas station and convenience store. Toward this end, the company borrowed more than $2 million against the property and demolished the restaurant soon after closing on Lot 6. The new construction was never completed. The bank holding the mortgage foreclosed on Lot 20 in November 2000 and bought it in March 2001, satisfying the debt. Karkoukli's principals apparently believed the bank was paying taxes on both Lot 20 and Lot 6, perhaps because both lots had been used as collateral for the bank loan. As a result, no taxes were paid for Lot 6. In June 2000, pursuant to Michigan statutes, the Oakland County Treasurer began the process of foreclosing on Lot 6 due to the unpaid taxes from tax year 1999.

As part of this process, the Oakland County Treasurer attempted to mail multiple notices to Karkoukli's, via first class and certified mail. These mailings went to Lot 20, which was the address listed for future tax bills on the quit claim deed for Lot 6 that was filed with the County Register of Deeds; to Lot 6 itself; and to a post office box set up by Karkoukli's president, Abdul Karkoukli, to receive business mail after the demolition of the restaurant. The box was only open for a few months. All of the mailed notices were returned as undeliverable by the postal service. Robert Luckey, Chief of Delinquent Tax for Oakland County, testified that as a result of the returned mail, he attempted to locate Mr. Karkoukli's home address in the phone book and on the internet, but did not succeed. At the time, Mr. Karkoukli maintained a home office for Karkoukli's, Inc. in Waterford. But, there is no documentary evidence that Karkoukli's ever listed this address in the County records. In his deposition, Mr. Karkoukli claims that he orally provided his home address to Larry Lockwood, of the Township's Engineering Department, but Lockwood did not remember that conversation and had no documentation of any update. Karkoukli's also accurately states that the home address was listed on several corporate filings made with the State, as evidenced by the State's own "Corporate Entity Document" website. Karkoukli's argues that the State's possession of these documents demonstrates the ease with which the County could have obtained the additional address, had it been so inclined.

Karkoukli also argues that his address could have been obtained from Walter Bedell, a private attorney who contracts with the Waterford Township to prosecute misdemeanors. In 2000, Bedell had two subpoenas issued for Mr. and Mrs. Karkoukli as witnesses in a criminal case. The address listed on the subpoenas was the home address where Mr. Karkoukli maintained an office for Karkoukli's, Inc. In Mr. Bedell's deposition he stated that, if an official from the County had sought his assistance in determining someone's address he "would cooperate with them 100%." Karkoukli's asserts that this testimony was proof that it would have been a simple matter for the government defendants to obtain the Karkouklis' home address. The defendants respond by pointing out that the Karkouklis were *witnesses* in a criminal case and thus, their information was not indexed to their name in the Township's records.

According to the District Court's opinion, in addition to the mailings, the defendants also posted a notice on the property and published a notice in the local newspaper. There is no evidence

in the record before us that supports either of those conclusions other than Karkoukli's admission below that defendants complied with all statutory requirements.[1]

A judgment of foreclosure was entered in Oakland County Circuit Court on February 13, 2002, and the property was subsequently purchased by defendant Township of Waterford. When the period of redemption then lapsed, title vested irrevocably in the Township.

## ANALYSIS

### *I. Michigan Foreclosure Law*

Michigan law requires that, over the two years following a failure to pay property tax, a "foreclosing governmental unit" must provide up to five notifications before foreclosure is finalized: two by first class mail, one by certified mail, one by personal contact or posting on the property, and one by newspaper publication. For deficiencies in tax year 1999, notices were to be sent via first class mail on June 1, 2001, and September 1, 2001.[2] *See* Mich. Comp. Laws §§ 211.78b & 211.78c (2005). A third notice was then to be sent via certified mail on February 1, 2002. *See id.* § 211.78f. If the property owner had not paid his taxes or made other arrangements, the property would then be forfeited to the County Treasurer on March 1, 2002. *See id.* § 211.78g. At this point, the governmental unit was to conduct a title search to identify all parties who had interests in the property and were therefore entitled to notice.

After forfeiture, the property owner had approximately one year to satisfy his debts before the Circuit Court entered a final foreclosure judgment. *Id*. During that one year period, the governmental unit was required to make a personal visit to the identified owners of interests in the property and serve a copy of the notice of foreclosure, or, if the land was vacant, to post a notice on the property. *See id.* § 211.78i(3). Finally, if prior efforts were unsuccessful in reaching an identified owner of an interest in the property, notice was to be made by publication for three consecutive weeks in a local paper in the county where the property was located. *See id.* § 211.78i(5).

### *II. Defendants' Compliance with Michigan law*

In its trial briefs opposing defendants' motion for summary judgment, Karkoukli's conceded "that Defendants Treasurer and County followed all statutory requirements to provide Plaintiff with notice of impending taking of the property," J.A. at 160, and again in response to a different motion, "Plaintiff admits that Defendant Treasurer followed the statutory requirements for notice." J.A. at 157.

In its appellate brief, Karkoukli's contradicts these previous admissions. Twice Karkoukli's points out the lack of evidence that the property was ever posted, a step that the statute clearly requires when the County finds that a property is vacant. More directly, on page 21 of the brief, it

---

[1] Defendants' appellate briefs do assert that the property was posted, Appellees' Br. at 25, but not that there was newspaper publication. No evidence is cited to prove the posting. This omission is likely due to Karkoukli's earlier concession that defendants "followed all statutory requirements to provide Plaintiff with notice of impending taking of the property." Defendants apparently viewed these points as uncontested and therefore entered no evidence to support them.

[2] Since Michigan implemented new procedures in 1999, the first notices were not sent until 2001. After this transition period, a deficiency would result in notices being sent the following year.

lists three conclusions a fact finder could allegedly reach regarding defendants' failures to comply with Michigan statutes.[3]

Karkoukli's did not assert statutory non-compliance as a ground for relief in its complaint, or in other papers in the District Court. Karkoukli's admissions of statutory compliance by defendants in its briefs below are therefore "judicial admissions" that estop Karkoukli's from raising a statutory non-compliance argument in this appeal. *See Ferguson v. Neighborhood Hous. Serv. of Cleveland Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986) ("Judicial admissions 'eliminate the need for evidence on the subject matter of the admission,' as admitted facts are no longer at issue.") (internal citations omitted). For the following discussion we consider it undisputed that defendants complied with Michigan law. The only remaining question is whether the procedures required by that law, as they were applied here, provided constitutionally sufficient notice.

### III. Due Process Notice Requirements

The Due Process clauses of the 5th and 14th Amendments prohibit the federal and state governments from depriving any person of property without "due process of law." "'The fundamental requisite of due process of law is the opportunity to be heard.' This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

*Mullane* presented the issue of what constituted sufficient notice to the beneficiaries of a common trust fund, established under New York law, that was facing judicial settlement. State law required only publication notice to the beneficiaries, in spite of the fact that the beneficiaries' rights to the fund would be "sealed and wholly terminated by the decree." *Id.* at 311. After engaging in a balancing analysis (involving the state's interest in reaching a final settlement versus the individuals' interests in their property), the Court held that publication notice was sufficient for beneficiaries "whose interests or whereabouts could not with due diligence be ascertained." *Id.* at 317. With respect to known beneficiaries, however, the Constitution required more; only notice that is "reasonably calculated to reach interested parties" would suffice. *Id.* at 318-20. The "reasonably calculated" standard is now widely accepted as the benchmark for resolving questions about the constitutionality of notice procedures.

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), applied *Mullane* to a property tax foreclosure case. The Mennonite Board of Missions ("Mennonite") held a mortgage on a piece of property in Indiana that had been foreclosed on by the government due to the owner's failure to pay property taxes. While Indiana law required that the owner be sent notice of the foreclosure via certified mail and that notice be published in a local newspaper for three weeks, no separate notice was required for mortgage holders. Mennonite did not receive any direct notice nor did it see the published notice. The Court held that, as a party holding a constitutionally protected interest in the property, Mennonite was entitled to additional due process. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party . . . if its name and address are reasonably ascertainable." *Mennonite,* 462 U.S. at 800 (emphasis in original). In dissent, Justice

---

[3]Therefore, a fact finder could reasonably conclude: (1) the County violated M.C.L. § 211.78i, because it did *not* contact the Township of Waterford and request information regarding the address of the Karkoukli's Inc., the property owner; (2) did not determine the address reasonably calculated to apprise those owners of a property interest of anticipated proceedings; (3) knowing of the deficiency in its notices, failed "to take reasonable steps in good faith to correct that deficiency not later than 30 days before the show cause hearing under M.C.L. § 211.78j."

Karkoukli's Br. at 21 (emphasis in original).

O'Connor pointed out that the majority opinion largely removed the historical obligation placed on those with an interest in property to keep themselves informed regarding proceedings about the property. *Id.* at 807. She cited this duty as providing the theoretical basis for allowing constructive notice at all.

More recently, in a case arising out of the Sixth Circuit, the Supreme Court re-affirmed its commitment to the *Mullane* "reasonably calculated" standard in the context of a government seizure of drug related property and cash. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice."). In responding to plaintiff's argument that the government failed to provide actual notice, in spite of the fact that he was in federal custody when notice was sent, the Court made clear that actual notice has never been a requirement under *Mullane*. "[*Mullane*] does not say that the State *must provide* actual notice, but that it *must attempt to provide* actual notice." *Id.* at 170 (emphasis in original).

In a 2000 case, the Michigan Supreme Court analyzed the constitutionality of the Michigan tax foreclosure notice scheme that preceded the one that governs the instant case. *Smith v. Cliffs on the Bay Condominium Ass'n*, 617 N.W.2d 536 (Mich. 2000), *cert. denied*, 532 U.S. 1020 (2001). Although the time frames for government action were somewhat longer in the previous system, the same basic notices (multiple mailings, publication, and posting) are required by both. *See Smith*, 617 N.W.2d at 541 n.5. In *Smith*, the township mailed notices to a corporate property owner at the address provided on the deed. The corporation had moved several times by then, always updating the state's Corporation and Securities Bureau, but not the township records. All mailings were returned as undeliverable. In reversing the Michigan Court of Appeals, the Supreme Court held that Michigan's notice provisions met the Constitution's due process requirements, as interpreted in *Mullane* and *Mennonite*. The plaintiff in the case had argued that, when a township received back its notices as undeliverable, due process required it to take additional steps to identify a valid address – specifically, to inquire with the state's Corporation Bureau. The Michigan Supreme Court, over a lone dissenting Justice, disagreed.

> No matter what efforts are made to give notice, the owner who has not, in fact, been provided notice will always contend that something more could have been done. This will make the process of tax sales completely unpredictable, destroying the government's ability to recoup unpaid taxes by foreclosing and reselling. For due process purposes, the focus must be on the constitutional adequacy of the statutory procedure and not on whether some additional effort in a particular case would have in fact led to a more certain means of notice.

*Smith*, 617 N.W.2d at 542. Karkoukli's asks this Court to adopt the position of the Michigan Court of Appeals and the dissent in the Michigan Supreme Court's opinion.[4]

---

[4] Karkoukli's also relies on a 7th Circuit opinion involving forfeited drug related property. In its brief, Karkoukli's quotes the following text from the opinion:

> Notice of forfeiture by mail to the claimant's residence is inadequate if the government knew that the claimant would not receive it . . . . When the government mails a notice to an address at which it knows the claimant not to be, the notice typically violates due process because it is not reasonably calculated to apprise the claimant of the action . . . . If it does nothing more, the government knows for fact [sic] that the claimant will never receive notice.

*Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000) (internal citations omitted). But Karkoukli's then fails to quote the sentence immediately following, which states, "When the government does not know or reasonably cannot discover the claimant's whereabouts, the government may satisfy due process with mere publication of a forfeiture notice." *Id*. Karkoukli's has admitted that publication and posting did occur in this case.

One interpretation of the case law described above is that once a government actor makes a constitutionally sufficient effort to attempt to provide actual notice, *e.g.* sending a letter in good faith to the last known address, there can be no constitutional claim. This interpretation is based on the principle that due process does not require actual notice, only that the government attempt to provide actual notice. An alternative view, argued by Karkoukli's, reads the "due diligence" language from *Mullane* and the "reasonably ascertainable" language from *Mennonite* more robustly. This interpretation would create a duty on government officials, when they become aware that an address is inaccurate, to take some additional affirmative steps to determine a correct address before they can consider an interest holder to be "unknown" and therefore eligible for publication notice alone. The former view reads "due diligence" and "reasonably ascertainable" as categorizing interest holders as either known or unknown at one time only, the time of mailing, while the latter reads the phrases as creating an on-going duty on government officials to respond with additional investigation if a letter is returned for having an incorrect address.

In this case, defendants' efforts, which included at least three mailings, posting of the property and publication, as well as Mr. Luckey's attempt to ascertain Mr. Karkoukli's address from the telephone book and internet, satisfy either interpretation of due process. Karkoukli's argues that the home office address could have been identified from the Township's criminal case records or the state's Corporate Entity website, and actual notice provided. While this proposition may be correct, it is not dispositive. The government defendants made significant, but admittedly not exhaustive, efforts to ascertain a valid address for Karkoukli's. They mailed notices to all of the addresses provided by the plaintiff to the County property offices. They also attempted to look up Karkoukli's president in the phone book and on the internet. Admittedly, the government did not query the Township, nor did it review the state's Corporate Entity website. But as the Michigan Supreme Court said, there will always be "something more that could have been done" to effect actual notice. The Constitution "does not require such heroic efforts by the Government; it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action." *Dusenbery*, 534 U.S. at 170.

After the defendants engaged in their significant efforts to mail actual notice to Karkoukli's, it was reasonable for them to treat Karkoukli's whereabouts as "missing or unknown" and move on to methods of constructive notice. Where a valid address is not reasonably ascertainable, then publication alone is adequate to satisfy due process.

> This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

*Mullane,* 339 U.S. at 317. Here, Karkoukli's has admitted that defendants not only published, but went even further and actually posted notice on the property itself. Posting notice is a significant act. The local officials must get out of the office, find the property, and put a notice up for all to see. The property owner did not live far away, was aware that property taxes had to be paid, and would be expected to check the property from time to time. The law expects at least some diligence from the property owner as well as the local officials. Here, the local officials made an effort. The property owner did not.

For the reasons described above, the District Court's ruling in favor of defendants is AFFIRMED.