SUTTON, J., delivered the opinion of the court in which GILMAN, J., joined. CLAY, J. (pp. 606-12), delivered a separate dissenting opinion.
OPINION
SUTTON, Circuit Judge.
For 'one reason or another, Ming Kuo and Julie Yang did not keep up their commercial property in Wyoming, Michigan. Neglect led to disrepair, which led by all appearances to abandonment and the safety risks that go with it. The city tried to contact the couple about the necessary fixes, but to no avail. After the last of the notices, the city leveled the building. The Yangs noticed that development and filed this § 1983 action in response, alleging that the city failed to provide them with sufficient notice of the demolition. The district court granted summary judgment to the city, holding that the city provided all of the notice that was reasonably due. We affirm.
I.
The Yangs purchased the building in 1989, and over the years leased it to an assortment of restaurants. In late 2010, they listed the property for sale, and in February 2011 the last restaurant to lease the property closed.
The Yangs never managed to sell the building or find another tenant after February 2011. From then on, they neglected the property, though they continued to pay their property taxes on it. That lack of attention and brisk Michigan winters took their toll. So did the work of local bandits. The building “was vandalized,” a city inspector said. R. 50-11 at 4. “Electrical wires were pulled out. The [water] meter had been stolen.... [T]he inspectors said ceiling fixtures were missing. Copper plumbing lines were cut out. All the kitchen equipment was gone.” Id. “The roof was failing. The front columns that supported the canopy over the entryway were starting to lean out.... You could see in the windows that the ceiling pads were coming down, looked like due to water coming through the roof.... Plant[e]r boxes around the building were failing.” R. 50-12 at 3. “The parking lot was ... full of potholes” and littered with abandoned vehicles. Id.
In October 2011, city officials posted an abandonment notice on the “dilapidated” building and mailed a copy to the owner listed in its files. R. 50-6 at 3. The mailed notice went to the address of the abandoned building and mistakenly listed the previous owner (Joseph Gordon), not the Yangs, as the recipient. The city took no further action at that time other than to reinspect the property each month and ensure the abandonment notice remained on the building.
Nine months later (July 2012), the city condemned the lot by posting a “repair/demolish” notice on the building. R. 48-13 at 3. At the same time, the city also sent out two notices through a signature-required certified mailing: a “Notice and Order to Repair or Demolish,” which said that the structure violates state or local building codes and warned that continued noncompliance could lead to “demolition,” R. 48-9 at 2-3, and a “Notice of Posting,” which detailed the property’s shortcomings, R. 48-8 at 2. Once again, that mail went to the abandoned property’s address and listed Joseph Gordon as the recipient.
Two months later, the post office returned the certified letter as unclaimed, “unable to forward,” and addressed to a “vacant” building. R. 48-12 at 2. The city “did a title search,” which “came up with a *602 new owner of record”: the Yangs. R. 48-14 at 4. Armed with the correct owner and the correct residential address of the owner, the city sent the Notice and Order to Repair or Demolish and the Notice of Posting by certified mail in September 2012 to the Yangs’ home in nearby Grand Rapids.
By mid-October, the city had not heard from the Yangs. It scheduled a hearing about demolishing the property for November 1 and sent the Yangs a hearing notice by regular mail. The city also mailed a copy of the hearing notice to the Yangs’ realtor.
Soon after these actions, the post office returned as “unclaimed” the certified mailing sent to the Yangs’ home. The city did not resend the information contained in that mailing. That information, however, was already contained in material part in the regular, non-certified mailing that the city sent to the Yangs’ home and that never came back to the city.
The November 1 hearing arrived, but the Yangs did not. The board approved the demolition, because it found “the property ha[d] not been maintained,” “repairs • would be expensive,” and “[a] vacant lot would still be of value to the owner.” R. 48-21 at 4. Afterward, the city sent another notice to the Yangs’ home address by regular mail. This one informed the couple of the planned demolition and their right to appeal the board’s order to state court. That letter too was not returned. Still no word came from the Yangs. In January 2013, the city razed the Yangs’ property and mailed them a $22,500 bill for the work.
That got their attention. Ming Kuo called the city’s chief building inspector to see what had happened to the property. According to the city, Ming Kuo said, “I remember getting the mail that said something about fixing up the building but I ignored it.” R. 51-3 at 4. According to the Yangs, they “did not receive any notices or letters” telling them that “the [c]ity might demolish thefir] building.” R. 48-2 at 4.
Rather than pay the demolition bill, the Yangs filed this § 1983 action in federal district court. They claim that the city violated their procedural due process rights by destroying their property without adequate notice. The district court granted summary judgment to the city. See Yang v. City of Wyoming, 31 F.Supp.3d 925, 931 (W-D.Mich.2014). The Yangs appeal.
II.
Before a state or local government may deprive an individual of a property interest, the Due Process Clause of the Fourteenth Amendment requires it to provide “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). A city like Wyoming must supply notice through means that “one desirous of actually informing the absentee might reasonably adopt.” Id. at 315, 70 S.Ct. 652. “The Constitution ... judges the adequacy of notice from the perspective of the sender, not the recipient,” Lampe v. Kash, 735 F.3d 942, 944 (6th Cir.2013), which means that the individual recipient’s lack of due diligence will not negate otherwise reasonable efforts at notice, see Karkoukli’s, Inc. v. Dohany, 409 F.3d 279, 285-86 (6th Cir. 2005).
Notice mailed to a person’s home address generally satisfies due process. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). But what happens if *603 local officials send notice through signature-required certified mail and the letter is returned unclaimed, as happened here? The government’s response, as with any attempt at providing notice, must be “reasonable” under the “particular circumstances.” Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). When unclaimed certified mail represents the government’s first attempt at notice, for example, it must take “additional reasonable steps” to notify the interested party. See Jones v. Flowers, 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). No set-in-stone formula solves the problem of unclaimed certified mail, but posting notice or sending it by regular mail generally will do the trick. See id. at 234-35, 126 S.Ct. 1708.
In this instance, the city made four other attempts to reach the Yangs on top of the certified mail it sent to the couple’s home address. Taken together, these efforts were “reasonably calculated” to give notice to the Yangs. See Jones, 547 U.S. at 229,126 S.Ct. 1708.
1. The posted notices. The city began posting abandonment notices on the Yangs’ building in October 2011 and kept them there through January 2013, when it razed the building. Posting notice is “a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him.” Jones, 547 U.S. at 236, 126 S.Ct. 1708 (ellipses omitted). It is also “a significant act. The local officials must get out of the office, find the property, and put a notice up for all to see.” Karkoukli’s, 409 F.3d at 286. The record does not say what the initial notice said, but by July 2012 at the latest — four months before the November hearing — the city began posting “repair/demolish” notices on the property. R. 48-13 at 3. Although the record does not contain copies of these notices (the building was destroyed after all), these city notices generally say that a “structure[] was found to be a Dangerous Building within the context of the [Wyoming City] Code” and that failure to return the building to “complete compliance” may result in “demolition.” R. 48-15 at 2-3. But whatever the specific contents of the posted “repair/demolish” notices were, the city had ample reason to think that the Yangs, like any reasonable property owners (and especially reasonable property owners who live nearby), would find the notices relating to “repair[s]” and “demoli[tion]” on their property. Id. “[I]n most cases, the secure posting of a notice on the property ... offer[s] that property owner sufficient warning of the pendency of proceedings possibly affecting his interests.” Greene v. Lindsey, 456 U.S. 444, 451, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982).
2. The hearing notice. The city also sent the Yangs a letter about the demolition hearing by regular mail. That letter gave the Yangs a good deal of information. It came from the city’s “Building Inspections Department” and listed the property’s address in the subject line. R. 48-20 at 2. The letter thus alerted the Yangs to the inspection-related problems with the property. And it alerted them that the city would conduct a hearing about an alarm-bells topic: a “Notice to Repair or Demolish the structure(s).” Id. The notice also mentioned chapter 10 of the Wyoming City Code, which explains the reasons why the city would deem a building “dangerous” and thus subject to “demolition.” Wyoming City Code §§ 110.1-.2. The letterhead contained “an address, phone number, and website with which to obtain more information” about the hearing too. See Gooch v. Life Investors Ins. Co., 672 F.3d 402, 424 (6th Cir.2012) (quotation *604 omitted); see also Herrada v. City of Detroit, 275 F.3d 553, 559 (6th Cir.2001).
3. The realtor’s hearing notice. The city also forwarded the hearing notice to the Yangs’ realtor. As the district court noted, sending the notice to the realtor was not a “mere gesture.” Yang, 31 F.Supp.3d at 930. The return of the certified mail meant one of two things: Either the Yangs refused to accept mail that would put them on notice of the consequences of neglecting their property, or they no longer lived at the Grand Rapids address. Rather than assume the former (which might have been understandable under the circumstances), the city acted based on the latter. Contacting the realtors of a property owner is a reasonable way to contact the owner — indeed an eminently intelligent and good faith way— as the realtor would be a likely source of the owner’s contact information.
4. The post-hearing notice. Even after all of this, the city did not demolish the Yangs’ building as soon as the hearing ended. It sent the Yangs another notice by regular mail. It informed the couple that the board had “affirmed the City’s Notice and Order to Demolish” and that, if no appeal to county court was filed within thirty days, the city’s contractors would “remove the structure” from the property “at their earliest convenience.” R. 48-22 at 2. Post-hearing notice alone may satisfy due process so long as the interested party still has another meaningful opportunity for a hearing. The subsequent hearing “cure[s]” any lack of notice about the initial hearing. See McKinney v. Pate, 20 F.3d 1550, 1557, 1562-64 (11th Cir.1994) (en banc); see also In re Tidwell, 295 F.3d 331, 334 (2d Cir.2002). What matters is that the Yangs have an opportunity for a fair pre-demolition hearing, and the state-court appeals process would have provided one. After sending the post-hearing notice to their accurate residential address, the city waited to hear from the Yangs for two more months before demolishing the property. All of these forms of notice considered, the city satisfied due process before tearing down a building that even the Yangs do not deny was dangerous and dilapidated.
The Yangs deploy a divide-and-conquer approach in attacking this conclusion. Posted notice by itself does not suffice, they say; the hearing notice taken alone did not contain the city’s reasons for demolishing the property; and the post-hearing notice as the sole form of notice would have come too late. But that is not the way this works. The question is whether the city’s many notice efforts amounted in the aggregate to a reasonable effort to apprise the Yangs of what was going on. Lest we forget, the city mailed the Yangs all of the information they needed to their home address by certified mail. That step by and large satisfied the city’s initial due process responsibilities. See Tulsa, 485 U.S. at 490, 108 S.Ct. 1340; Schluga v. City of Milwaukee, 101 F.3d 60, 62 (7th Cir.1996). After the certified mailing came back unclaimed, the city needed to respond reasonably to the failure. See Jones, 547 U.S. at 229, 126 S,Ct. 1708. But neither Jones nor any other case holds that the city acts treasonably simply because its subsequent responses would not — each by themselves — independently satisfy due process, as the Yangs seem to think.
Nor would that make sense. Reasonableness inquiries occur case by case, circumstantially, and above all with attention to all that the government has done. So considered, the city’s responses to the returned certified mail were reasonable. One response was to rely on the hearing notice sent by regular mail. Another was to keep “repair/demolish” notices posted *605 on the property. (Who by the way does not look at their property when it is located nearby for more than fourteen months?) And another was to give post-hearing notice of their appeal rights and of the impending demolition if they do nothing. All that was missing is actual notice — expressly acknowledged by the Yangs. But that is not the test, as all agree. At some point, the question must turn from how often — and in how many forms — notice is due to how many times the property owner neglects to respond with the diligence that is due. Either way, the city satisfied its reasonableness requirements.
Nor does it make a difference that the regular mail notice — mailed after the certified mail was sent — did not give the reasons for a potential demolition. The reason turns again on the nature of the inquiry — an aggregate consideration of what was done. To see why, imagine that the city, after learning that the Yangs had not claimed the certified mail, sent them a letter by regular mail saying: “We sent you a notice by certified mail stating that we plan to demolish your property, but it came back unclaimed. Please call us at (phone number) so that we can provide you with the necessary information.” Would we say the city’s effort was unreasonable because the followup notice did not itself include the reasons for the demolition? Of course not. Recall that the city had already sent the reasons for the demolition by certified mail. Yes, the Yangs did not get them, but the point turns on reasonable efforts to provide notice, not notice actually received. Notice to call the city would make up for the failed certified mail because it would give any reasonable person 'a means to learn about the demolition. “Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led.” Espinosa v. United Student Aid Funds, Inc.,, 553 F.3d 1193, 1203 (9th Cir. 2008), aff'd, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). That in essence is just what happened here. Here is what the regular-mail notice said: “Re: 2675 28th St. S.W. [the address of the Yangs’ building] Please take notice that a hearing shall be held” at “a meeting of the Wyoming Housing Board of Appeals.... regarding the City’s Notice to Repair or Demolish the structure(s), in conformity to Chapter 10 of the Code of the City of Wyoming.” R. 48-20 at 2.
The dissent claims that the Yangs’ “behavior has no bearing whatsoever” on whether the City’s notice was adequate to satisfy due process. Ante at 610. That is true in one sense: We will not excuse unreasonable notice on the ground that a more responsible property owner might have found out about the planned demolition on his own. But it is not true in another sense: That the Yangs chose (apparently) not to visit their property for fourteen months or chose (apparently) not to open their mail does not diminish the city’s reasonable efforts at providing notice. “The law expects at least some diligence from the property owner,” Kar-koukli’s, 409 F.3d at 286, and that reality necessarily affects how courts gauge reasonable efforts. We know of no case — and neither the Yangs nor the dissent have cited one — in which a city made so many attempts to provide notice and yet was still found to violate due process.
The Yangs add that we should ignore the notice posted on the abandoned building and pretend it never happened — because that piece of paper (presumably destroyed with the building) never made it into the record. But the city’s building-code enforcement log states that a city official “posted” a “repair/demolish” order *606 on the building in July 2012. R. 48-13 at 3. And the Yangs have no contrary evidence. On this record, the Yangs cannot deny that such a notice was posted. See Anderson v. Liberty Lobby, Inc., All U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The Yangs also make much of the city’s initial notice attempts, which were sent to the address of the building and identified the recipient as the prior owner. But defective notices like these are irrelevant to the inquiry, so long as the city’s later efforts were “reasonably calculated” to provide notice — which they were.
For these reasons, we affirm.