*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LILLIAN A. SCOTT,

        Claimant-Appellant,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee.

UNPUBLISHED
May 25, 2023

No. 350690
Berrien Circuit Court
LC No. 18-000266-AE

ON REMAND

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court. Claimant Lillian A. Scott is seeking to challenge the Unemployment Insurance Agency's determination of fraud requiring her to pay restitution and penalties under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*. In our prior opinion, we held in relevant part that an administrative law judge (ALJ) finding that Scott received notice of the fraud determination was not supported by substantial evidence and that she should therefore be granted 30 days to file a late appeal of that determination. In lieu of granting leave to appeal, the Supreme Court reversed this part of our opinion and remanded the case to us for consideration of the remaining two issues argued by Scott as to why she should be allowed a late appeal. See *Scott v Dep't of Labor & Economic Opportunity/Unemployment Ins Agency*, ___ Mich ___; 983 NW2d 417, 417-418 (2023) (*Scott II*). Having done so, we reverse and remand for further proceedings.

## I. BACKGROUND

We previously set forth the factual and procedural history of this case. Relevant to the issues now before us, our opinion provided:

> On May 9, 2014, the Agency generated a series of four notices retroactively finding Scott disqualified from receiving unemployment benefits. For reasons that are not

-1-

clear, the notices each carry their own case number, even when referring to the same matter. Specifically, in LARA case no. 0-002-333-913, the Agency generated a "Notice of Determination" informing Scott that she was disqualified from benefits because she voluntarily quit her employment on May 30, 2013. In case no. 0-001-824-775, the Agency issued an additional Notice of Determination informing Scott that her actions indicated that she intentionally misled or concealed information to obtain benefits she was not entitled to and that her benefits will be terminated on any claims active on May 25, 2013. The Agency also produced a separate document titled, "Restitution," listing the amounts of overpayments and penalties that Scott was required to pay for benefits received from June 8, 2013, to March 8, 2014.

In addition to the Notices of Determination, the Agency issued two "Notice[s] of Redetermination." In case no. 0-002-333-915, the Notice of Redetermination found that Scott was ineligible for benefits collected from November 04, 2012 through June 01, 2013, because she was working full-time during that time period. The second Notice of Redetermination, issued in case no. 0-002-333-916, asserted that Scott's actions indicated that she intentionally misled or concealed information to obtain benefits she was not entitled to and that her benefits will be terminated on any claims active on November 03, 2012. The Agency also produced a statement of restitution owed, totaling the amounts of overpayments and penalties assessed for November 10, 2012, through June 1, 2013. [*Scott v Dep't of Labor and Economic Opportunity/Unemployment Insurance Agency*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 350690); slip op at 2 (*Scott I*).]

The period to appeal these determinations lapsed, and at some point, the Agency began intercepting Scott's income tax refunds and garnishing her wages in satisfaction of the outstanding restitution and penalty amounts. In 2018, Scott filed a protest of the determinations with the Agency and requested to reopen her cases. The Agency concluded that Scott was time-barred from doing so because she had not appealed the determinations within one year of the May 9, 2014 mailing date. See MCL 421.32a(2), as amended by 2011 PA 269. Scott appealed that decision and sought a hearing before an ALJ. After a hearing, the ALJ affirmed the Agency's denial of the request to reopen Scott's case, ruling that she did not establish a timely protest or good cause for a late protest of the 2014 determinations. The ALJ did not find credible Scott's testimony that she did not receive the notices through the mail.

Scott appealed the ALJ's order to the Michigan Compensation Appellate Commission (MCAC), arguing that she had good cause for a late appeal because the Agency's determinations did not provide reasonable and adequate notice. The MCAC summarily affirmed the ALJ's decision. Scott then appealed to the trial court, who concluded that there was competent, material, and substantial evidence to sustain the findings of the ALJ and the MCAC. The trial court further concluded that the ALJ's and the MCAC's decisions were not contrary to constitutional due-process requirements.

In Scott's brief on appeal, she raised four relevant arguments: (1) the fraud determinations sent to her did not have adequate information to satisfy statutory notice and due-process

requirements; (2) the Agency acted too late to find fraud under MCL 421.32a(2); (3) Scott's challenges were not untimely because the appellate deadlines should have tolled until she had actual notice of the fraud claims against her; and (4) there was good cause to allow Scott to file a late appeal under Mich Admin Code R 421.270(1).

While the appeal with this Court was pending, the Supreme Court decided *Dep't of Licensing and Regulatory Affairs/Unemployment Ins Agency v Lucente*, 508 Mich 209; 973 NW2d 90 (2021) (*Lucente II*), which reversed this Court's published decision in *Dep't of Licensing and Regulatory Affairs/Unemployment Ins Agency v Lucente*, 330 Mich App 237, 250; 946 NW2d 836 (2019) (*Lucente I*). In short, the Supreme Court held that "the Agency must issue a 'determination' before it issues a 'redetermination' and that the failure to do so is grounds for setting aside a determinationless 'redetermination.' " *Lucente II*, 508 Mich at 246.

As noted above, in case nos. 0-002-333-915 and 0-002-333-916, the Agency issued notices of "redetermination" concluding that Scott had improperly received benefits while she was employed and that she intentionally misled or concealed information to obtain benefits, i.e., she engaged in fraud. "No original 'determination' was issued with respect to this fraud determination." *Scott I*, ___ Mich App at ___; slip op at 5. Given *Lucente II*, our original opinion in this case held that "the 'redeterminations' issued to Scott in case nos. []915 and []916 and the associated fines and penalties are invalid." *Scott I*, ___ Mich App at ___; slip op at 5. We also determined that *Lucente II* was dispositive of Scott's argument that the Agency missed the deadline for finding fraud under MCL 421.32a(2). See *Scott I*, ___ Mich App at ___ n 5; slip op at 4 n 5. The Supreme Court's order partially reversing our original opinion in this case did not disturb our decision related to the redeterminations. See *Scott II*, ___ Mich at ___; 983 NW2d at 417.

Accordingly, Scott's remaining arguments concern only case nos. 0-002-333-913 and 0-001-824-775, in which the Agency issued "determinations" concluding, respectively, that Scott was ineligible to receive benefits after she voluntarily left her employment and that she engaged in fraud. *Scott I*, ___ Mich App at ___; slip op at 5. We originally held that the deadline for Scott to challenge the 2014 determinations should have been tolled under *McBride v Americana Mobile Home Park, Inc*, 173 Mich App 275, 282; 433 NW2d 336 (1988), because there was a lack of proof that Scott received the determinations. We determined that "the trial court misapplied the substantial-evidence test to the ALJ's findings that Scott received the 2014 determinations," citing a lack of "affirmative evidence in the record to support a finding of fact that the Agency sent the notices . . . ." *Scott I*, ___ Mich App at ___; slip op at 8. Given our ruling, it was unnecessary for us to address Scott's alternative arguments that the content of the fraud determination denied her due-process right to adequate notice and that there was good cause to allow a late appeal. *Scott I*, ___ Mich App at ___; slip at 8 n 16.

Judge REDFORD dissented from this part of our opinion, concluding "that the circuit court did not misapply the substantial evidence test to the ALJ's factual findings that Scott received the 2014 determinations." *Scott I*, ___ Mich App at ___; slip op at 6 (REDFORD, J., dissenting in part). The Supreme Court reversed our decision with respect to tolling "for the reasons stated by dissenting Judge REDFORD." *Scott II*, ___ Mich at ___; 983 NW2d at 417. The Court then remanded the case to this Court for consideration of the remaining two issues argued by Scott but not decided in this Court's original opinion. See *id*. at ___; 983 NW2d at 417-418.

-3-

## II. DISCUSSION

The primary remaining issue that we did not previously address is whether the content of the fraud determination and the multiple notices sent at once to Scott provided her adequate notice of the reasons for the fraud determination so as to satisfy due process. Scott also argues that there is good cause to reopen her case and allow a late appeal under MCL 421.32a(2) and Mich Admin Code R 421.270(1). We will address each argument in turn.[1]

## A. DUE PROCESS

Both federal and state constitutions "preclude the government from depriving a person of life, liberty, or property without due process of law." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 605-606; 683 NW2d 759 (2004), citing US Const, Amend XIV; Const 1963, art 1, § 17. "Procedural due process serves as a limitation on government action and requires government to institute safeguards in proceedings that affect those rights protected by due process, including life, liberty, or property." *Thomas v Pogats*, 249 Mich App 718, 724; 644 NW2d 59 (2002). "A procedural due process analysis requires a dual inquiry: (1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient." *Hinky Dinky*, 261 Mich App at 606 (quotation marks and citation omitted).

There is no dispute that there is a sufficient interest at stake to invoke due-process protection given that a determination of fraud allows the Agency to impose substantial civil and, in some instances, criminal penalties.[2] See MCL 421.54. Thus, the question in this case is what amounts to due notice when the Agency finds that a claimant committed fraud.

"An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). As it pertains to administrative agencies, due process requires "timely written notice detailing the reasons for proposed administrative action." *Bundo v City of Walled Lake*, 395 Mich 679, 698; 238 NW2d 154 (1976). See also *Hardges v Dep't of Social Servs*, 177 Mich App 698, 702; 442

---

[1] When reviewing a lower court's review of an administrative decision, this Court must determine whether the lower court "applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017) (quotation marks and citation omitted). "Whether an administrative agency exceeded its scope of authority or misapplied the law are questions of law that are reviewed de novo." *Lucente II*, 508 Mich at 230. "Constitutional issues are reviewed de novo as a matter of law." *Thomas v Pogats*, 249 Mich App 718, 724; 644 NW2d 59 (2002).

[2] MESA authorizes up to quadruple penalties, i.e., 400%, for certain types of fraud. See MCL 421.54(b)(*ii*). For comparison, tax fraud is only punishable by a 100% penalty. See MCL 205.23(5).

NW2d 752 (1989) ("At a minimum, due process requires the agency to explain, in terms comprehensible to the claimant, exactly what the agency proposes to do and why the agency is taking this action.") (citation omitted). Consistent with these due-process principles, MCL 421.32(a) requires the Agency to promptly notify the claimant and other interested parties of the determination and "the reasons for the determination."

As noted, there were two Notices of Determination issued to Scott. The fraud determination, issued in case no. 0-001-824-775, did not include the reasons for the Agency's conclusion that Scott intentionally mislead or concealed information in order to obtain benefits. The substance of that notice merely provided:

> Issues and Sections of Michigan Employment Security Act involved: Misrepresentation and 62(b).
>
> Your actions indicate you intentionally misled and/or concealed information to obtain benefits you were not entitled to receive.
>
> Benefits will be terminated on any claims active on May 25, 2013.
>
> You are disqualified for benefits under MES Act, Sec. 62(b)

This notice is plainly deficient because it failed to specifically identify the underlying allegations supporting the fraud determination and thus failed to place Scott on notice of the conduct she must defend. That conclusion is support by the three factors outlined in *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976), for determining what due process requires:

> (1) the private interest that will be affected by the action of the State, (2) the governmental interest that will be affected if the safeguard is to be provided, and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. [*People v Kennedy*, 502 Mich 206, 215; 917 NW2d 355 (2018) (quotation marks and citation omitted).]

First, the private interest at stake is substantial considering the penalties that may be imposed for unemployment fraud. See MCL 421.54. Second, the burden on the government to explain the factual basis for the fraud determination is minimal. That information is readily available to the Agency as it appears in the other Notice of Determination. We do not dispute the Agency's position that multiple determinations are required by MESA, however, this does not excuse the Agency from providing sufficient information in the fraud determination to allow the claimant to understand the basis for the Agency's decision. We find instructive the recent holding of the United States Supreme Court that a statute requiring the government to issue "a notice to appear" for a removal hearing means that the government must produce a single document with all the required information. *Niz-Chavez v Garland*, 593 US ___; 141 S Ct 1474, 1484-1486; ___ L Ed 2d ___ (2021). In response to the government's objection that this may require the issuance of supplemental notices to amend the time and place for the hearing, the Court stated, "If the government finds filling out forms a chore, it has good company. The world is awash in forms,

and rarely do agencies afford individuals the same latitude in completing them that the government seeks for itself today." *Id*. at ___; 141 S Ct at 1485. The Court concluded that

> when the federal government seeks a procedural advantage against an individual, it will at least supply him with a single and reasonably comprehensive statement of the nature of the proceedings against him. If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them. [*Id*. at ___; 141 S Ct at 1486.]

For similar reasons, we have no qualms about requiring the Agency to provide the specific reasons for the finding of fraud in the fraud determination itself. Finally, for determinations issued under Michigan's automated fraud detection program, the Michigan Integrated Data Automated System (MiDAS), there is clearly a high risk of an erroneous fraud determination. See *Cahoo v SAS Analytics Inc*, 912 F3d 887, 894 (CA 6, 2019) ("[MiDAS] was deeply flawed; the Michigan Auditor General reviewed over 22,000 of MiDAS' fraud determinations and found that 93% of them did not actually involve fraud. In other words, 93% of MiDAS' fraud adjudications were false-positives."). And providing claimants with the specific underlying allegations will allow them to better defend against such determinations.

The Agency does not seriously contend that the fraud determination, standing alone, satisfies due process. Nonetheless, the Agency maintains that Scott received adequate notice based on the totality or "aggregate" of the information contained in the multiple notices. We conclude, however, that even if the notices are considered in the aggregate, they did not reasonably inform Scott of the Agency's reasons for the fraud determination.

"Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Procedural due process claims are evaluated on a case-by-case basis. See *In re Rood*, 483 Mich 73, 122; 763 NW2d 587 (2009). See also *Yang v City of Wyoming*, 793 F3d 599, 604 (CA 6, 2015) ("Reasonableness inquiries occur case by case, circumstantially, and above all with attention to all that the government has done.").

The Agency asserts that the facts underlying the fraud determination at issue are provided in the Notice of Determination issued in case no. 0-002-333-913, i.e., the voluntary-quit determination, the substance of which provides:

> Issues and Sections of Michigan Employment Security Act involved: Voluntary Quit and 29(1)(a).

> You quit your job with ENTERPRISE SYNERGY LLC on May 30, 2013 due to other personal reasons.

> Your leaving was voluntary and not attributable to the employer.

> You are disqualified for benefits under MES Act, Sec. 29(1)(a).

For multiple reasons, we conclude that the voluntary-quit determination does not provide reasonable notice of the basis for the fraud determination.[3] First, the Notices of Determination have different case numbers, which would indicate to the recipient that the documents are not related to a single case. Despite being related to one another, the fraud determination was issued in case no. 0-001-824-775, whereas the voluntary-quit determination was issued in case no. 0-002-333-913. No explanation has been offered for why the Agency uses different case numbers for documents relating to the same matter. Second, the voluntary-quit determination does not allege that Scott intentionally misrepresented the reason for her employment departure, and thus there is nothing to suggest that this is the underlying reason for the fraud determination. Third, the voluntary-quit determination asserts that Scott is disqualified from benefits under MESA Section 29(1)(a),[4] whereas the fraud determination provides that she is disqualified under MESA Section 62(b),[5] further implying that the notices are unrelated.

It must also be remembered that the Agency simultaneously issued six notices to Scott (two notices of determinations, two notices of redeterminations, and two statements of restitution). The Agency relies on this "package of documents," suggesting that, given the amount of information provided to Scott, she must have received adequate notice. In fact, the opposite is true. Considering the multiple notices—relating to four separate case numbers—sent to Scott on the same day, it is unreasonable to expect that she would piece together the various bits of information to discern the basis for the Agency's fraud determination. See *Niz-Chavez*, 593 US at ___; 141 S Ct at 1485 (indicating that sending "a series of letters" "each containing a new morsel of vital information" would likely confuse the recipient).

For these reasons, we conclude that the Agency failed to give Scott reasonable notice of the reasons for the fraud determination.[6] As a remedy for the due-process violation, Scott asks

---

[3] To the degree that Scott asserts that the notice disqualifying her for benefits because she voluntarily quit her job fails to satisfy due process, we disagree. That notice provided a clear and comprehensible basis for the disqualification and satisfied due process unlike the notice of the fraud determination.

[4] MCL 421.29.

[5] MCL 421.62(b).

[6] In *Lucente I*, 330 Mich App 237, this Court held that the Agency's failure to first issue a determination before a redetermination did not violate due process. *Id*. at 264-266. This Court also determined that the "redeterminations" provided adequate notice to the claimants. *Id*. While the Supreme Court reversed on other grounds, as discussed, it nonetheless reversed *Lucente I* in full. See *Lucente II*, 508 Mich at 247 ("[T]he judgment of the Court of Appeals is reversed."). Accordingly, we are no longer bound by *Lucente I*'s due process holding. See *Kostreva v Kostreva*, 337 Mich App 648, 659; 976 NW2d 889 (2021) ("Because this Court's decision . . . was wholly reversed, no part of it remains binding authority."); *Estate of Wanda Jesse v Lakeland Specialty Hosp at Berrien Ctr*, 328 Mich App 142, 149 n 2; 936 NW2d 705 (2019) ("A Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding.") (quotation

that the fraud determination be vacated. However, we see no principled reason to deviate from the relief outlined in *McBride*, 173 Mich App at 283-283, that we applied in our original opinion. That is, we see no material distinction between not receiving a determination and receiving a determination containing inadequate notice of its underlying reasons such that a different remedy is warranted. See *Abbott v Howard*, 182 Mich App 243, 251; 451 NW2d 597 (1990) (considering the equities of the case in determining the remedy for a procedural due-process violation.). Accordingly, consistent with *McBride*, 173 Mich App at 282-283, Scott will be allowed thirty days on remand to file an application for review of the fraud determination on the merits.

## B. GOOD CAUSE TO REOPEN

Scott also argues that there is good cause to reopen her case and allow a late appeal.

An interested party has 30 days "after the mailing or personal service of a notice of determination" to file a request for review with the Agency. MCL 421.32a(1). In May 2014, when the Agency issued the determinations at issue, MCL 421.32a(2) provided in pertinent part:

> The unemployment agency may, for good cause, including any administrative clerical error, reconsider a prior determination or redetermination after the 30-day period has expired and after reconsideration issue a redetermination affirming, modifying, or reversing the prior determination or redetermination . . . . *A reconsideration shall not be made unless the request is filed with the unemployment agency, . . . within 1 year from the date of mailing or personal service of the original determination on the disputed issue*. [MCL 421.32a(2), as amended by 2011 PA 269 (emphasis added).]

Accordingly, at the relevant time,[7] the good-cause exception applied only to appeals or protests filed within a year of the mailing of the decision. And given the Supreme Court's remand

---

marks and citations omitted). Further, the primary issue in *Lucente I* was whether the Agency was depriving claimants of the process due under MCL 421.32a by issuing redeterminations rather than determinations. See *Lucente I*, 330 Mich App at 264-265. There is no citation or discussion of any caselaw pertaining to due-process requirements. Moreover, as noted, whether a claimant received due process is decided on a case-by-case basis, and there are distinguishing facts in this case given that the Agency simultaneously sent six notices pertaining to four different case numbers.

[7] MCL 421.32a(2) now provides in relevant part that "[a] reconsideration shall not be made unless the request is filed with the unemployment agency, or reconsideration is initiated by the unemployment agency with notice to the interested parties, within 1 year after the date of mailing or personal service of the original determination on the disputed issue *or, if the original determination involved a finding of fraud, within 3 years after the date of mailing or personal service of the original determination*." MCL 421.32a(2), as amended by 2017 PA 232, effective July 1, 2018. However, even if the three-year reconsideration period provided by the current version of the statute applied in this case, Scott's March 30, 2018 protest would still be untimely to challenge the May 9, 2014 determinations.

order, we must accept the ALJ's finding that Scott received the May 9, 2014 determinations. Because Scott failed to protest the May 9, 2014 determinations within a year of their issuance, the determinations are final by operation of MCL 421.32a(2). Accordingly, she is not eligible for a late appeal under MCL 421.32a(2), and we need not address the nonexclusive circumstances listed in Mich Admin Code R 421.270(1) for determining if good causes exists.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh