RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THE KEENE GROUP, INC.,

        *Plaintiff-Appellant*,

  *v.*

CITY OF CINCINNATI, OHIO; ART DAHLBERG, Director, Department of Buildings & Inspections for the City of Cincinnati; EDWARD CUNNINGHAM, Division Manager, Division of Property Maintenance Code Enforcement, Department of Buildings & Inspections for the City of Cincinnati; SEAN MINIHAN, Assistant Supervisor of Inspections, Division of Property Maintenance Code Enforcement, Department of Buildings & Inspections for the City of Cincinnati; KEVIN RHODES, Inspector, Hazard Abatement Program, Division of Property Maintenance Code Enforcement, Department of Buildings & Inspections for the City of Cincinnati; JOHN DOES 1–5,

        *Defendants-Appellees*.

No. 20-3807

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:19-cv-00730—William O. Bertelsman, District Judge.

Decided and Filed:  May 20, 2021

Before:  CLAY, READLER, and, MURPHY, Circuit Judges.

---

## COUNSEL

**ON BRIEF:**  Curt C. Hartman, THE LAW FIRM OF CURT C. HARTMAN, Cincinnati, Ohio, for Appellant.  Jacklyn Gonzales Martin, CITY OF CINCINNATI, Cincinnati, Ohio, for Appellees.

  CLAY, J., delivered the opinion of the court in which MURPHY, J., joined, and READLER, J., joined in part.  MURPHY, J. (pg. 16), delivered a separate concurring opinion.  READLER, J. (pp. 17–20), delivered a separate opinion concurring in part and in the judgment.

——————————

**OPINION**

——————————

CLAY, Circuit Judge.   Plaintiff The Keene Group, Inc. appeals the district court's dismissal of its complaint against the City of Cincinnati, Ohio ("the City") and several members of its Department of Buildings and Inspections.   Plaintiff's claims arise from the City's demolition of a building as a public nuisance on property owned by Plaintiff.   The complaint asserted causes of action under 42 U.S.C. § 1983 and for trespass under Ohio law.   Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   The district court granted the motion and entered judgment in favor of Defendants.   We **AFFIRM**.

**BACKGROUND**

**Factual Background**

The City demolished a building located at 5033 Newfield Avenue in Cincinnati, Ohio on April 8, 2019.   Prior to its demolition, the property had been the subject of two simultaneous, although uncoordinated, government proceedings.   One, a property code enforcement action, led to the property's condemnation in December 2017 and eventually its demolition.   The other, a tax foreclosure action, ultimately resulted in Plaintiff's purchase of the property at a sheriff's sale in July 2018.

On April 27, 2017, the Hamilton County Treasurer commenced a tax foreclosure action against the then-owner of the property, Devin D. Davis.   The case was filed in the Hamilton County Court of Common Pleas, and the City was named as a defendant.   On November 27, 2017, a judgment and a decree for sale were entered.   On May 21, 2018, an order for a sheriff's sale of the property was issued by the Hamilton County Clerk of Court.   A notice of the sheriff's sale was served on the City's counsel on June 1, 2018.

During 2017 and through the summer of 2018, a building on the property was also the subject of administrative condemnation proceedings conducted by the City's Department of Buildings and Inspections.   The building was condemned on December 6, 2017.   At a public

hearing on June 29, 2018, Defendant Sean Minihan, acting under the authority of the City's Chief Building Official, was presented with evidence of damage to the building, premises strewn with trash and vegetation, a dead tree that was creating a hazard for nearby structures, and delinquent taxes. After considering this evidence and his own observations, Minihan concluded that the building presented a fire and safety hazard and needed to be demolished. His decision was dated July 16, 2018 and was sent by certified mail to the owner of the property then on record, Davis.

After the public hearing, but before the decision to demolish the building was made, Plaintiff emerged as the successful bidder at the sheriff's sale on July 5, 2018. A decree confirming the sale was entered by the Court of Common Pleas on July 17, 2018. Plaintiff's winning bid was $22,520.65. A sheriff's deed was issued on August 9, 2018. The deed was recorded with the Hamilton County Recorder later that month.

Plaintiff was not aware of the demolition decision prior to the razing of the building. On the other hand, Defendants Minihan and Edward Cunningham of the City's Department of Buildings and Inspections knew that Plaintiff had become the owner of the property prior to the demolition. On November 14, 2018, they sent letters to Plaintiff and its agent summarizing the public nuisance proceedings, informing Plaintiff of the decision to raze the building, and requesting that Plaintiff respond "within 10 days to acknowledge receipt of this notice and provide [its] plan to bring the building into compliance." (Notice of Nuisance Declaration, R. 7-5, Page ID #86.) The letters were sent via certified mail, with return receipt requested, but were never delivered to Plaintiff or its agent. Defendants made no subsequent efforts to provide notice of the demolition to Plaintiff.

On January 4, 2019, Defendant Kevin Rhodes directed a construction company to proceed with a demolition and site clearance at the property. The building was demolished on April 8, 2019. On January 2, 2020, the City demanded $10,515.00 from Plaintiff for the costs of the demolition, to be paid within 30 days, with 9% interest charged on the balance.

**Procedural Background**

Plaintiff filed the original complaint in this suit on September 3, 2019 and a three-count amended complaint on November 25, 2019.[1]  Plaintiff also filed a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d) on January 29, 2020, with allegations relating to the newly issued invoice for demolition costs.

Defendants moved to dismiss the amended complaint on December 9, 2019.  The district court held a hearing on the motion on May 28, 2020.  On July 14, 2020, the district court granted Defendants' motion, *Keene Group, Inc. v. City of Cincinnati*, No. 19-730, 2020 WL 3980304 (S.D. Ohio July 14, 2020), and entered judgment.  An amended judgment was entered on July 29, 2020, dismissing the amended complaint with prejudice.  Plaintiff timely appealed.

**DISCUSSION**

**Standard of Review**

We review a district court's grant of a motion to dismiss *de novo*.  *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in its favor, and accept all well-pleaded allegations in the complaint as true.  *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 897 (6th Cir. 2019).  This analysis focuses on "the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be

---

[1]The second count of the amended complaint was for a declaratory judgment.  The district court construed this count as a requested remedy, rather than a separate cause of action, and dismissed it in light of its finding that no constitutional violations occurred.  Plaintiff does not challenge this analysis on appeal or argue that its request for a declaratory judgment can be maintained independent of its constitutional claims.

taken into account." *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## I. Due Process Claim

Plaintiff argues that the City failed to provide adequate notice, as required by the Due Process Clause of the Fourteenth Amendment, before taking its property and demolishing the building located at 5033 Newfield Avenue. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" before the government may take property. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Equally well-established by *Mullane* is that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. However, actual notice is not required. *See Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

The district court properly dismissed this claim because Plaintiff purchased the property with full knowledge of the condemnation proceedings that resulted in the demolition. Despite its admitted awareness of the public nuisance issues with the building, Plaintiff took no action to resolve those problems or work with the City on a solution. Moreover, Plaintiff's argument that the City was required to use all public databases to gather additional contact information after the November 2018 letters failed to be delivered was rejected by the Supreme Court in *Jones v. Flowers*, 547 U.S. 220 (2006).

In fact, Plaintiff's appeal primarily relies on *Jones*, which held that the government does not meet *Mullane*'s "desirous of actually informing" standard if it did "nothing when a certified letter sent to the owner is returned unclaimed." *Id.* at 229. Plaintiff claims that is precisely what happened in this case, and that the district court must be reversed.

There is no dispute that Defendants sent Plaintiff certified letters to provide notice of the demolition, those letters were never delivered, and Defendants knew or should have known that their attempt at notice had failed. Attached to the amended complaint were the certified letters sent to Plaintiff and its agent in November 2018 entitled "Notice of Nuisance Declaration."

Those letters stated that the property had been declared a public nuisance, that the building was subject to demolition, and that Plaintiff, as the property's owner, would be responsible for the costs of abatement. The notice also requested that Plaintiff contact Defendants Minihan or Cunningham within ten days to acknowledge receipt and to present a plan to bring the building into compliance with relevant Cincinnati municipal code sections. The letters were not delivered to Plaintiff or its agent. The City does not deny that it knew these efforts at notice had failed prior to the demolition of the building.

Plaintiff argues that, under these facts, this case is controlled by *Jones*, which held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225. The Supreme Court found in *Jones* that "[u]nder the circumstances presented [t]here, additional reasonable steps were available to the State." *Id.*

*Jones* does not require reversal here because, as the Supreme Court reiterated in that case, what constitutes adequate notice under the Due Process Clause depends on the circumstances of each case. *Id.* at 227; *see Mullane*, 339 U.S. at 314 (recognizing that the notice required must be "reasonably calculated, under all the circumstances"); *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 284 (6th Cir. 2005) (describing the Supreme Court's continued commitment to *Mullane*'s "reasonably calculated" standard). As Defendants persuasively argue, the circumstances here are very different than those that led to the finding of a due process violation in *Jones*.

In *Jones*, the plaintiff had purchased a home in 1967 and lived there with his wife until they separated in 1993. *Jones*, 547 U.S. at 223. For thirty years, he paid his mortgage each month, and the mortgage company paid his property taxes until the mortgage was paid off in 1997. *Id.* After that point, property taxes on the home were not paid. In 2000, a state tax commissioner sent a certified letter to the home attempting to inform the plaintiff of the tax delinquency and further stating that if the tax issues were not resolved, the home would be sold. *Id.* This letter was returned unclaimed to the commissioner. *Id.* at 223–24. Two years later, after a purchase offer had been submitted, another certified letter was sent to the plaintiff at the home regarding the pending sale. *Id.* at 224. This letter was also returned unclaimed. *Id.* These letters and publication of a notice of public sale in the local newspaper were the only attempts

the commissioner made to provide the plaintiff notice of the tax issues with the property before the plaintiff's daughter was served with an unlawful detainer notice and notified her father of the tax sale. *Id.*

The facts here are very different than those that were dispositive in *Jones*. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of *the pendency of the action* and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314 (emphasis added). By its own admission, Plaintiff had actual notice of the condemnation proceedings that ultimately resulted in the demolition order. (May 28, 2020 Mot. Hr'g Tr., R. 26, Page ID #290.) Plaintiff also admitted it knew it would have to repair the property to abate the public nuisance, but it did nothing. (*Id.*) Accordingly, the district court correctly found that Plaintiff was provided with sufficient notice of the demolition due to its knowing purchase of a property subject to pending condemnation proceedings. *See Keene Grp.*, 2020 WL 3980304, at *3 (describing how Plaintiff admitted that "it was aware the Property was subject to nuisance proceedings").

Plaintiff's contention that the district court improperly relied on so-called "inquiry notice" arguments that were rejected in *Jones* is misplaced. *Jones* found that "common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." *Jones*, 547 U.S. at 232. In *Jones*, the Supreme Court relied on its earlier opinion in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), which held that a party's "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." *Jones*, 547 U.S. at 232–33 (quoting *Mennonite*, 462 U.S. at 800). However, in this case, Plaintiff did have knowledge "equivalent to notice that a tax sale was pending"—it knew that the property was the subject of on-going condemnation proceedings before purchase and that the property would have to be repaired because it was a nuisance.

Fundamentally, Plaintiff's due process argument is premised on a misunderstanding of the notice to which it was entitled in this case. Plaintiff alleges, which we accept as true, that it was not aware of the demolition order against the building on the property. However, that fact is irrelevant to the *Mullane* notice inquiry under the circumstances of this case. *Mullane* requires

that a rights holder be apprised "of the pending proceedings," which Plaintiff admitted was the case even before it purchased the property. *Cruz-Gomez v. Lynch*, 801 F.3d 695, 700 (6th Cir. 2015). The fact that Plaintiff was unaware of the demolition order itself was the direct result of its own failure to take advantage of its "opportunity to present [its] objections," and not a deprivation of due process. *Mullane*, 339 U.S. at 314. Unlike the property owners in *Jones* or *Mennonite*, Plaintiff had no doubt as to whether "proceedings are therefore likely to be initiated." *Mennonite*, 462 U.S. at 799. Condemnation proceedings had begun, and Plaintiff knew it. Accordingly, the district court's dismissal of Plaintiff's due process claim was appropriate.

Even if Plaintiff were entitled to notice of the demolition order itself, this case is also distinguishable from *Jones* in that the undelivered letters were the last in a series of efforts by Defendants to provide notice of the taking to Plaintiff, rather than the only such effort. The tax commissioner's failure in *Jones* to make additional attempts to provide notice of the tax sale was a constitutional violation not only because the tax commissioner should have done more to provide notice of the impending tax sale, but also because the government could have. *Jones*, 547 U.S. at 234. On the other hand, "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* One of the "reasonable followup measures" pointed to by the Supreme Court in *Jones* was posting notice on the property itself. *Id.* at 235; *see also Min Kuo Yang v. City of Wyoming*, 793 F.3d 599, 603 (6th Cir. 2015) (same). The Supreme Court recognized that "posting notice on real property is a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him." *Jones*, 547 U.S. at 236 (cleaned up); *Yang*, 793 F.3d at 603 (same). The demolition order was posted on the property in this case. Defendants maintained before the district court and on appeal that they complied with Cincinnati Municipal Code § 1101-57.5, which required posting of the demolition decision on the property. Moreover, the notice letters that were never delivered to Plaintiff, but were attached as exhibits to the amended complaint, also explained that all relevant provisions of Cincinnati Municipal Code § 1101-57 had been exhausted. *See Karkoukli's*, 409 F.3d at 281–83 & n.1, 285 n.4 (concluding that the plaintiff's admission that the government complied with all statutory requirements constituted evidence that the government defendants had posted notice on the property).

We also note that Plaintiff's characterization of what constitutes a reasonable additional step that Defendants should have taken to provide notice is inconsistent with the Supreme Court's decision in *Jones*.  Plaintiff argues that once Defendants knew the November 2018 letters had not been delivered, they should have searched the general city database for additional contact information for Plaintiff.  The plaintiff in *Jones* made effectively the same argument and "believe[d] that the commissioner should have searched for his new address in the . . . phonebook and other government records such as income tax rolls."  *Jones*, 547 U.S. at 235–36. The Supreme Court squarely rejected the contention that "the government was required to go this far" and concluded that "[a]n open-ended search for a new address . . . imposes burdens on the State significantly greater than the several relatively easy options" it had discussed previously, including posting of notice on the property.  *Id*. at 236.

We rejected similar arguments as those offered by Plaintiff in *Karkoukli's, Inc. v. Dohany*.  In *Karkoukli*'s, we found that when the government has "made significant, but admittedly not exhaustive, efforts to ascertain a valid address" for a property owner, it need not review every government record or database for updated contact information.  *Karkoukli's*, 409 F.3d at 285.  As here, among the efforts the government undertook in *Karkoukli's* to provide notice of a real property seizure—in that case, a tax foreclosure and sale—was posting of notice on the property at issue.  We observed that "[p]osting notice is a significant act" because it requires significant expenditure of effort and resources by government officials.  *Id.* at 286.  We concluded, "[t]he law expects at least some diligence from the property owner as well as the local officials.  Here, the local officials made an effort.  The property owner did not."  *Id.*  So too here.

Because Plaintiff was provided with "notice reasonably calculated, under all the circumstances," of the pendency of the condemnation proceedings, we affirm the district court's dismissal of Plaintiff's due process claim.

## II. Warrantless Seizure Claim

The district court also properly dismissed Plaintiff's Fourth Amendment claim for a warrantless seizure. The City did not need to obtain a warrant to demolish a vacant building that had been condemned by administrative proceedings which met the requirements of due process.

Defendants do not dispute that their demolition of a building on Plaintiff's property implicates the Fourth Amendment's regulation of governmental seizures. "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental [seizure] is 'reasonableness.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). On the other hand, "the text of the Fourth Amendment does not specify when a search warrant must be obtained . . . ." *Kentucky v. King*, 563 U.S. 452, 459 (2011). No case raised by Plaintiff supports applying the warrant requirement in this case, and since Plaintiff makes no other argument that Defendants' seizure of the property was unreasonable, Plaintiff has failed to state a claim for a violation of the Fourth Amendment.

As the district court recognized, a panel of this Court in *Embassy Realty Investments, Inc. v. City of Cleveland*, 572 F. App'x 339 (6th Cir. 2014), found that the warrant requirement did not apply in virtually identical circumstances. As an unpublished decision, *Embassy Realty* is not binding precedent, but we may consider it for its persuasive value. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). In *Embassy Realty*, the property owner purchased a building that had already been condemned, and although he was not aware of the condemnation at the time of purchase, he did participate significantly in administrative and judicial proceedings prior to the challenged demolition. *Embassy Realty*, 572 F. App'x at 341–43. As relevant here, the panel rejected the property owner's argument that a warrant was required to effect demolition, finding that "a warrantless entry to abate a nuisance after the entry of remedial orders does not violate the Fourth Amendment provided such entry does not invade a constitutionally-protected privacy interest." *Id.* at 345.

*Embassy Realty*'s conclusion that the warrant requirement did not apply was largely based on the panel's survey of cases from our sister circuits after "research yielded no Sixth Circuit decision on point . . . ." *Id.* Those courts have uniformly found that "[a] warrant is

unnecessary when a municipality seizes property that has been declared a nuisance by means of established police power procedures" in the absence of a constitutionally protected privacy interest. *Freeman v. City of Dallas*, 242 F.3d 642, 644–45 (5th Cir. 2001) (en banc); *see also Santana v. City of Tulsa*, 359 F.3d 1241, 1245 (10th Cir. 2004) (holding "that as long as procedural due process standards are met and no unreasonable municipal actions are shown, a nuisance abatement action does not violate the Fourth Amendment"). As with unpublished decisions, out-of-circuit cases are not binding, but may be considered. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010) (recognizing that out-of-circuit cases are not precedential but may be looked to, especially when reviewing unresolved questions of law).

Plaintiff has not demonstrated a reasonable expectation of privacy in the property. The Supreme Court "generally determine[s] whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Riley v. California*, 573 U.S. 373, 385 (2014) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Here, "the plaintiff[] retained little or no reasonable expectation of privacy in their dilapidated, uninhabited rental properties after the [City] had entered orders declaring them an urban nuisance, and the owner[] had failed to abate the code violations." *Freeman*, 242 F.3d at 652. Plaintiff has pointed to no authority that a warrant is required to demolish vacant buildings determined to be a public nuisance after an administrative process. There is no suggestion that Plaintiff ever occupied the property or attempted to prevent others from accessing it. *See Watson v. Pearson*, 928 F.3d 507, 511 (6th Cir. 2019) (recognizing exception to warrant requirement for uninhabited property). Nor is Plaintiff's bare ownership of the property sufficient to support the imposition of the warrant requirement in this case. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003) (recognizing that "ownership alone does not justify a reasonable expectation of privacy").

Plaintiff's briefing cites one case, *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990), for the general proposition that "[e]ntry to abate a known nuisance falls within the warrant requirement of the fourth amendment." But *Conner* does not require reversal here. We note that other circuits that have considered what they understood to be *Conner*'s imposition of a

warrant requirement regardless of any pre-abatement procedures, have rejected it. *See Santana*, 359 F.3d at 1245 (rejecting application of Fourth Amendment warrant requirement when procedural due process met and no other unreasonable government action); *Freeman*, 242 F.3d at 652 (holding that there is "no Fourth Amendment bar to warrantless condemnation and eviction proceedings, where satisfactory administrative procedures preceded them"); *Hroch v. City of Omaha*, 4 F.3d 693, 697 (8th Cir. 1993) (doubting *Conner*'s "statements to the effect that an administrative condemnation or seizure may never be implemented without a judicial warrant").

However, we need not resolve this conflict because *Conner*, by its own terms, does not apply in a case like this one where Plaintiff had no reasonable expectation of privacy. In *Conner*, government officials "scaled the fence on the Conner property" and, later, after a hearing officer determined certain old and inoperable automobiles constituted a public nuisance, "broke down the fence surrounding the Conner property and removed two of the vehicles from the property." *Conner*, 897 F.2d at 1489. *Conner* involved an invasion of the quintessential private space—the plaintiffs' occupied home, which was surrounded by a fence to keep others out. *Id.* at 1494. The plaintiffs' reasonable expectation of privacy was critical to the court's analysis, as *Conner* recognized that the Supreme Court in *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977), had endorsed warrantless seizures when the property was taken from "public streets, parking lots, or other open places, and did not involve an invasion of privacy." *Conner*, 897 F.2d at 1492 n.6 (quoting *G.M. Leasing*, 429 U.S. at 351); *see also Schneider v. Cnty. of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994) (finding *Conner* did not invalidate abatement action when property was seized from land the plaintiff owned, but where he did not live, because "having suffered no invasion of privacy, [the plaintiff] would not have standing to complain that its curtilage was invaded without a warrant").

Other cases cited by Plaintiff in support of applying the warrant requirement in this case simply do not apply. *Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015), and *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996), involved home searches by police in response to noise complaints and, as the district court pointed out, "were not subject to remedial orders as a result of public nuisance proceedings." *Keene Grp.*, 2020 WL 3980304, at *5. No court has interpreted the Supreme Court's decision in *Michigan v. Tyler*, 436 U.S. 499 (1978), to require a

warrant in an administrative public nuisance abatement case in the absence of a reasonable expectation of privacy. *Tyler* presented a challenge to warrantless searches by a fire department after a fire had been extinguished. The Michigan Supreme Court held these subsequent searches violated the warrant requirement and ordered a new trial. *Id.* at 503–04. The Supreme Court affirmed, rejecting Michigan's arguments that "no individual privacy interests are threatened," *id.* at 504, when officials enter a building to investigate the cause of a recent fire and that government entries days after the fire had been extinguished were justified by "the initial exigency," *id.* at 511, presented by the blaze. Plaintiff correctly points out that *Tyler* held that public officials who enter a property to, for example, "locate and abate a suspected public nuisance," are subject to the Fourth Amendment, but the application of the Fourth Amendment is not disputed here. *Id.* at 504. Plaintiff errs, however, when it elides any distinction between the Fourth Amendment and the warrant requirement and assumes they are coterminous—a proposition *Tyler* does not support. *Id.* at 506 (observing that there are classes of cases where a search may be reasonable without being authorized by a warrant). As *Tyler* recognized, searches can be very disruptive to the occupants of the property to be searched, and the "function" of requiring public officials to go before a magistrate to obtain a warrant is to "prevent[] harassment by keeping that invasion [of privacy] to a minimum." *Id.* at 507–08.

The warrant requirement does not apply in this case because Plaintiff had no reasonable expectation of privacy in the property. Accordingly, the only question under the Fourth Amendment is whether Defendants' seizure was reasonable. Plaintiff has presented no argument, outside the lack of a warrant, that the demolition of the building on the property violated the Fourth Amendment. Plaintiff has also presented no argument that the condemnation proceedings violated due process, excepting the notice argument we rejected above. Since Plaintiff "had been afforded adequate due process relating to the condemnation proceedings . . . , the warrantless entrance on the Property to remediate the established nuisance was reasonable under the Fourth Amendment." *Embassy Realty*, 572 F. App'x at 345. The district court correctly dismissed Plaintiff's Fourth Amendment claim for an unreasonable seizure.

## III. Trespass Claim

Plaintiff's trespass claim under Ohio law against the individual Defendants was also properly dismissed.  As an initial matter, the only assignment of error in Plaintiff's principal brief is that the district court erred by granting Defendants' motion to dismiss on the basis of an affirmative defense.  However, "it is beyond doubt . . . that a district court may base a motion to dismiss on an affirmative defense." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 925 (6th Cir. 2013).  Since "an appellant forfeits an argument that he fails to raise in his opening brief," and the only challenge Plaintiff raised in its initial brief to the dismissal of its trespass claim is foreclosed by clear precedent, the district court may be affirmed on that basis alone. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

Moreover, Plaintiff's argument regarding affirmative defenses is inapplicable in any event.  Plaintiff mischaracterizes the district court's dismissal of its trespass claim as relying on Defendant's assertion of an affirmative defense of privilege, rather than a determination that the amended complaint "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Ohio Supreme Court has held that "[a] common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another . . . ." *Apel v. Katz*, 697 N.E.2d 600, 607 (Ohio 1998) (second alteration in original) (quoting *Linley v. DeMoss*, 615 N.E.2d 631, 633 (Ohio Ct. App. 1992)).  The fact that a defendant acts "without authority or privilege" is an element of the tort of trespass that a plaintiff must demonstrate at each stage of the case. *See Chance v. BP Chems., Inc.*, 670 N.E.2d 985, 993 (Ohio 1996) (finding that the plaintiffs had failed to establish trespass claim "as a matter of law" in part because the defendant operated "wells pursuant to required permits").  Accordingly, when the district court dismissed Plaintiff's trespass claim after concluding that "Defendants had authority to enter the Property . . . by virtue of the public nuisance proceedings," it was not resolving the claim on the basis of an affirmative defense. *Keene Grp.*, 2020 WL 3980304, at *5.

Plaintiff cites an Ohio intermediate appellate court decision for the proposition that the assertion of privilege or authority is an affirmative defense to the tort of trespass under Ohio law, *North Fairfield Baptist Church v. G129, LLC*, No. CA2010-11-298, 2011 WL 2449296, at *3

(Ohio Ct. App. June 20, 2011). However, given the repeated clear statements by the Ohio Supreme Court that acting without authority or privilege is an element of the trespass tort under Ohio law, we would decline to follow *North Fairfield Baptist Church*. *See Lukas v. McPeak*, 730 F.3d 635, 637–38 (6th Cir. 2013) (recognizing that a federal court must consider state intermediate appellate decisions in resolving questions of state law unless there is precedent from the highest state court or the federal court is convinced the highest court of the state would decide otherwise).

Finally, regardless of whether the district court dismissed the trespass claim on the basis of an affirmative defense or for failure to state a claim, Plaintiff offers no substantive arguments that Defendants lacked the authority to enter the property to abate a public nuisance. In its reply, Plaintiff argues that Defendants' right to enter the premises is dependent on their compliance with due process and conclusorily asserts that it is premature to make a final determination on that question. It also accuses Defendants of misconstruing the complaint, but does not explain how. These claims were presented too late and are too undeveloped to be considered. *See United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016) (deeming an undeveloped argument forfeited); *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) (observing that argument is not preserved on appeal if raised for first time in the reply brief).

Plaintiff presented a single due process challenge to the condemnation proceedings—lack of adequate notice—which we rejected. Accordingly, if we were to reach the merits, we would find that the district court properly dismissed Plaintiff's trespass claim. The allegations in the amended complaint undisputedly show that Defendants had authority to enter the property due to condemnation proceedings which authorized the demolition of a public nuisance on Plaintiff's property and were conducted in accord with due process.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment granting Defendants' motion to dismiss.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

MURPHY, Circuit Judge, concurring.   I am pleased to concur in Judge Clay's fine opinion for the court and write only to highlight the narrow nature of our Fourth Amendment ruling.  We hold that the City of Cincinnati did not need to obtain a warrant before demolishing a house that it had determined through its administrative process to be a public nuisance in need of destruction.  The claim that the City needed a warrant to seize this property after completing this (judicially appealable) process is analogous to the suggestion that the government needs a warrant to seize a person that a jury has found guilty beyond a reasonable doubt.  When balancing the privacy and government interests at stake to determine whether a warrant was required, *see Riley v. California*, 573 U.S. 373, 385–86 (2014), the court suggests that The Keene Group had no reasonable expectation of privacy in the property.  Although this phrase sometimes has a specialized connotation, *see, e.g.*, *Byrd v. United States*, 138 S. Ct. 1518, 1526–27 (2018), I understand us to be holding in this case only that no warrant was required.  I do not understand us to be touching on the antecedent question whether The Keene Group even had standing to raise a Fourth Amendment challenge against searches or seizures of the property.  "Whether a warrant is required is a separate question from . . . whether the person claiming a constitutional violation 'has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge.'"  *Id.* at 1526 (citation omitted).  We answer only the warrant question here.

---

### CONCURRING IN PART AND IN THE JUDGMENT

---

READLER, Circuit Judge, concurring in part and concurring in judgment.  Like the majority opinion, I would affirm the district court.  With respect to resolution of the Fourth Amendment claim, I join the majority opinion with the same understanding outlined in Judge Murphy's concurring opinion.  But as to the due process claim, I would resolve it on somewhat different grounds.

To assess whether the City of Cincinnati properly gave notice of its intention to demolish the Keene Group's private property, we traditionally ask whether the City provided "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 604 (6th Cir. 2015) ("Reasonableness inquiries occur . . . above all with attention to all that the government has done.").  Applying this standard, we held in *Karkoukli's, Inc. v. Dohany* that a Michigan county's procedures for foreclosing on a commercial property satisfied due process where the county mailed multiple letters to the property owner and, in addition, both "published" and "posted notice on the property itself."  409 F.3d 279, 280–81, 285, 286 (6th Cir. 2005).  We held the same where government officials sent at least five notices to the property owner prior to demolishing a dilapidated commercial property.  *Yang*, 793 F.3d at 601–02.

The City of Cincinnati's efforts here were of the same ilk.  The City posted notice of the building's condemnation and upcoming nuisance hearing on the property, posted notice of the demolition order on the property following the hearing, and posted the demolition order in the City Bulletin and online.  *See Jones v. Flowers*, 547 U.S. 220, 236 (2006) (explaining that "posting notice on real property is a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him" (cleaned up)).  Those actions, moreover, supplemented the mailings sent to the property owner of record at all relevant stages.  True, in this case, unlike others, ownership transferred during the course of the nuisance proceedings.

But for due process purposes, that transfer did not erase the City's efforts up to that point to provide interested parties with notice of the pending demolition. Any other conclusion, the district court aptly noted, "would require the [City] . . . to halt and restart nuisance proceedings every time title to a nuisance property changes hands . . . [,] unduly hamper[ing] the state's interest in demolishing blighted properties." *Keene Grp., Inc. v. City of Cincinnati*, No. 1:19-CV-730-WOB, 2020 WL 3980304, at \*3 (S.D. Ohio July 14, 2020); *cf. United States v. Harold*, --- F. App'x ---, 2021 WL 753437, at \*3 (6th Cir. Feb. 26, 2021) ("[I]f a party to litigation over property could sell it without the purchaser being bound, it would enable unscrupulous litigants to pass the property from hand to hand to ensure that 'a final decree bearing fruit could never be reached.'" (quoting *G. & C. Merriam Co. v. Saalfield*, 190 F. 927, 932 (6th Cir. 1911))). So while the certified mail sent by the City regarding the pending demolition apparently did not reach the Keene Group, it bears noting that the City's final (and unsuccessful) salvo was preceded by many other attempts to apprise interested parties of the proceedings. *Cf. Jones*, 547 U.S. at 229 (finding two unsuccessful mailing efforts insufficient as a matter of due process).

While I thus join in the majority opinion's resolution of the due process claim, I part ways over the apparent notion that awareness of a property's condemnation necessarily satisfies due process for purposes of demolishing the property. In Cincinnati, condemnation is an administrative matter handled by the City seemingly without a hearing. *See* Cincinnati Mun. Code § 1101-63 (permitting the Director of Buildings and Inspections to deem buildings "dangerous and unsafe"); *Vacated & Condemned Buildings (VBML)*, City of Cincinnati, https://www.cincinnati-oh.gov/buildings/property-maintenance-code-enforcement/vacated-condemned-buildings-vbml/ (last accessed Apr. 27, 2021) (explaining that "[o]nce [the City] receive[s] a complaint, the building is inspected" and "[i]f deemed dangerous and unsafe, it will be condemned"). A condemnation determination is sometimes—but not always—a prelude to a more serious remedial effort by the City. *See* Cincinnati Mun. Code § 1101-63 (requiring notice of condemnation before "proceed[ing] in accordance with the provisions of" Cincinnati Municipal Code § 1101-57 (Demolition or Repair), § 1101-63.4 (Emergency Demolition or Repair), or § 1101-75 (Barricading of Buildings)).

Demolition, on the other hand, may occur only after the City holds a public hearing to determine if a building is a public nuisance. *See id.* § 1101-57.2. And even following a public nuisance determination, demolition is not preordained. Rehabilitation is at least one other remedy available to the City or property owner. *See id.* § 1101-57.3 (permitting repair and rehabilitation by private parties); *id.* § 1101-57.5 (permitting repair and rehabilitation by the government). Confirming as much, in this case, the City acknowledged that demolition was not inevitable through the letters it sent to the Keene Group. *See* Notices of Nuisance Declaration, R. 1-5, PageID#23 (requesting that the Keene Group "contact [us] . . . within 10 days to acknowledge receipt of this notice and *provide your plan to bring the building into compliance*" (emphasis added)); R. 1-6, PageID#24 (same). All things considered, without more, in Cincinnati, one's knowledge that a property has been condemned is not tantamount to notice that the property will be demolished.

Contrast that with the majority opinion, which finds the fate of the Keene Group's due process claim sealed by the fact that Keene Group both had actual notice of the condemnation and "admitted [its] awareness of the public nuisance issues." Those admissions bear weight, to be sure. But the Keene Group's mere knowledge of condemnation or public nuisance issues does not, to my mind, excuse the City's duty to provide constitutionally sufficient notice. *Yang*, 793 F.3d at 605 (explaining that we "will not excuse unreasonable notice on the ground that a more responsible property owner might have found out about the planned demolition on his own").

For many of the same reasons, I am unpersuaded by the majority opinion's treatment of *Jones*. In *Jones*, the Supreme Court reiterated that "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale was pending," meaning that the absence of notice of the latter was not excused by notice of the former. 547 U.S. at 232–33 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). In reconciling today's case with *Jones*, the majority opinion finds the Keene Group's knowledge of ongoing condemnation proceedings to be essentially "equivalent to notice that a tax sale is pending," and deems that knowledge sufficient for due process purposes. But in many respects, condemnation is more analogous to a threshold tax delinquency. After all, just as a delinquency can be remedied by payment to the

government, condemnation can be remedied by repairing and preserving the property in question. *See id.* at 233 ("Arkansas affords even a delinquent taxpayer the right to settle accounts with the State and redeem his property, so Jones' failure to pay his taxes in a timely manner cannot by itself excuse inadequate notice."). Demolition, meanwhile, is more akin to a tax sale; neither act, once completed, typically can be undone. *See id.* at 239 (describing the "extraordinary power" of "taking and selling a house [one] owns" through a tax sale). In other words, "knowledge" of condemnation is not "equivalent" to "notice" of demolition. *See id.* at 232–33. Nor, it follows, does notice of the former necessarily create a duty of inquiry to excuse the government's lack of effort to provide notice of the latter. *Yang*, 793 F.3d at 605.

All of that said, because the City did more than just give notice of condemnation—it, among other things, posted notice of the demolition order—its acts satisfied our traditional government-focused due process inquiry. *Id.* at 602 ("The Constitution . . . judges the adequacy of notice from the perspective of the sender, not the recipient . . . ." (quoting *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013))). For these reasons, I concur in today's outcome.