NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0200n.06

Case No. 22-1859

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Apr 27, 2023
DEBORAH S. HUNT, Clerk

VINCE VAN VLECK,

    Plaintiff - Appellant,

v.

LEIKIN, INGBER, & WINTERS, P.C.,

    Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, THAPAR, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In April 2020, Vince Nicolas Van Vleck was served in person with a summons and complaint in connection with a lawsuit filed by Leikin, Ingber & Winters, P.C. ("Ingber") to collect a debt that Van Vleck owed to Ingber's client. The summons—served on a pre-printed administrative form—indicated that Van Vleck had twenty-one days to answer the complaint. It did not notify Van Vleck that the Michigan Supreme Court had temporarily suspended that deadline due to the COVID-19 pandemic. Van Vleck then sued Ingber, alleging that the personal service of process during Michigan's stay-at-home orders violated the Fair Debt Collection Practices Act ("FDCPA") and Michigan's Regulation of Collection Practices Act ("RCPA"). The district court dismissed Van Vleck's complaint, finding that Van Vleck did not suffer a concrete injury. Van Vleck then moved to vacate the judgment, sought leave to file an amended complaint, and moved to certify a question to the Michigan Supreme Court, all of which the district court denied. Van Vleck appeals. But because Van Vleck lacks standing to assert his claims, we affirm.

No. 22-1859, *Van Vleck v. Leikin, Ingber & Winters, P.C.*

I.

In early 2020, the spread of COVID-19 ravaged the United States. In response, the Governor of Michigan ordered a state of emergency and implemented strict stay-at-home orders for Michigan residents. Executive Order No. 42 stated that the "order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life," and required all individuals in Michigan to stay home unless they were "necessary to sustain or protect life or to conduct minimum basic operations." EO 2020-42. Workers necessary to conduct "minimum basic operations" were defined as those

> whose in-person presence is strictly necessary to allow the business or operation to maintain the value of inventory and equipment, care for animals, ensure security, process transactions (including payroll and employee benefits), or facilitate the ability of other workers to work remotely.

*Id.*

The Michigan court system also reacted to the COVID-19 pandemic. On March 23, 2020, the Michigan Supreme Court suspended the deadline to respond to a complaint during the COVID-19 state of emergency. Mich. Sup. Ct. Adm. Order 2020-3. And on April 17, 2020, the Michigan Supreme Court temporarily amended MCR 2.107(C) and required that "all service of process under this rule . . . be performed using electronic means (e-Filing where available, email, or fax, where available) to the greatest extent possible." Mich. Sup. Ct. Admin. Order 2020-9.[1]

---

[1] Although neither party nor the district court referenced this Administrative Order, it is a matter of public record and may be considered at the motion to dismiss stage. *See Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 310-11 (6th Cir. 2021) (The motion to dismiss stage "focuses on 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (internal citations omitted).

On April 23, 2020, Vince Van Vleck was personally served with a lawsuit filed by Ingber to collect a medical debt that was owed to Ingber's client, a hospital association. Van Vleck did not know the process server who knocked on his door and, given his immunocompromised status, asked his mother to answer the door. His mother returned to Van Vleck and explained that "a guy with a badge [was] asking for [him] and she was not sure why." DE 1, Compl., Page ID 9. Believing the process server to be law enforcement, Van Vleck answered the door. Van Vleck alleges that the process server showed him what appeared to be a badge and then served him with the state court summons and complaint. Specifically, the man "handed [Van Vleck] the paperwork from his clipboard" and Van Vleck "took the papers." *Id.* at Page ID 10.

Van Vleck believed that the age of the process server—the complaint does not offer an age range—put him in "a high-risk group to the effects of COVID-19, and as such could be a spreader." *Id.* at Page ID 11. Van Vleck cried after being served with process because he was afraid that he or his parents, with whom he lived, could have contracted COVID-19 from the process server. Van Vleck also talked with his physician and nurse about his interaction with the process server.

The summons served on Van Vleck was a State Court Administrative Office ("SCAO") form pre-printed to indicate that a defendant had twenty-one days after personal service to answer or otherwise respond to the complaint. However, the SCAO form was not updated to include the Michigan Supreme Court's suspension of the deadline to respond to a complaint during the COVID-19 state of emergency. Van Vleck therefore believed that he had to file an answer by May 11, 2020.

Van Vleck and his father drafted a response, and Van Vleck mailed it to the court on May 6, 2020. The state court issued him an Order to Appear for a June 24, 2020 court date. Van Vleck then hired an attorney to represent him in court. This lawsuit followed. Van Vleck alleged that

Ingber's actions violated the FDCPA and RCPA because in-person service of process during Michigan's COVID-19 state of emergency constituted harassment under both laws. He also alleged that the use of the SCAO form violated the rights of a class of people because the form's non-disclosure of the suspended deadline was false and misleading.

Ingber moved to dismiss Van Vleck's complaint, arguing that Van Vleck failed to sufficiently allege Article III standing to assert his claims. After briefing and a hearing on the motion, the district court concluded that Van Vleck lacked Article III standing to assert his claims under the FDCPA and dismissed his complaint without prejudice. It declined to exercise pendent jurisdiction over Van Vleck's state law claims and denied as moot Van Vleck's motion to certify a class action. A week later, the district court entered judgment against Van Vleck.

Van Vleck then moved to vacate the court's dismissal without prejudice and judgment, sought leave to file an amended complaint, and moved to certify a question to the Michigan Supreme Court.[2] In support, Van Vleck argued that the court erred by ruling on the merits of his complaint when evaluating his standing and by relying on extrinsic evidence to evaluate Van Vleck's argument that his asserted injury was akin to battery. He also asserted that he should be able to amend his complaint under Rule 15 because the court's dismissal without prejudice was not considered a final judgment, and his proposed complaint sufficiently cured all previously-identified defects. Separately, Van Vleck also moved to certify a question regarding the coverage of the Michigan Executive Orders to the state's Supreme Court.

The district court denied his motions. It reasoned that Van Vleck did not satisfy the requirements for reopening a case under Rule 59(e) or Rule 60(b) or provide any reason to justify

---

[2] On June 24, 2022, the case was reassigned from then-District Judge Stephanie D. Davis to Senior District Judge Denise Hood due to Judge Davis's appointment to the Sixth Circuit Court of Appeals.

the relief he sought. On the issue of standing, the district court concluded that its previous order properly held that Van Vleck did not allege a concrete injury for his claims based on any theory he presented and that his alleged injury was not akin to the traditional harms of battery or an abuse of process. It also held that the district court did not reach the merits of Van Vleck's claims or err by relying on evidence outside the complaint when assessing his battery analogy. Because it determined that Van Vleck did not satisfy the Rule 59 or Rule 60 requirements to reopen a case, it also denied his request for leave to amend. Finally, the district court denied Van Vleck's motion to certify, stating that it was not persuaded that the issue needed to be certified to the Michigan Supreme Court and that Van Vleck "should have raised this [certification] issue prior to dismissal of his cause of action." DE 83, Op. & Order, Page ID 1242-43. This appeal followed.

## II.

This case begins and ends with Van Vleck's lack of standing. Federal courts have power under the Constitution to adjudicate only "cases" and "controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). A challenge to a party's Article III standing is properly addressed as a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Those subject-matter jurisdiction challenges are of two varieties: (1) a facial attack, challenging jurisdiction based solely on the pleadings; or (2) a factual attack, challenging the factual basis for jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017). For a facial attack, "we must take as true all material allegations of the complaint." *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2020). We treat this as a facial 12(b)(1) motion. We review questions of standing de novo. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022).

To establish standing, Van Vleck must show that he suffered (1) an injury in fact (2) that was fairly traceable to Ingber's conduct and (3) that would likely be redressed by judicial relief. *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992)). An injury-in-fact requires the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). Van Vleck bears the burden of establishing these elements. *Id.* at 561. This dispute centers on whether Van Vleck's asserted injury is concrete.

Van Vleck's complaint alleges statutory violations of the FDCPA and the RCPA. However, a concrete injury must be established "even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). At the same time, the Supreme Court has recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute" concrete harm without the assertion of "any *additional* harm beyond the one Congress has identified." *Id.* at 342 (emphasis in original).

Plaintiffs asserting a statutory violation can demonstrate concrete injury in two ways. First, a plaintiff can show that the procedural harm itself is a concrete injury if it has "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" under the common law. *Id.* at 341. An "exact duplicate" of a traditionally recognized harm is not required. *Ward v. Nat'l Patient Acct. Svcs. Sols., Inc.,* 9 F.4th 357, 362 (6th Cir. 2021) (citing *TransUnion v. Ramirez,* 141 S. Ct. 2190, 2209 (2021)). Second, a plaintiff can show that "the procedural violations caused an independent concrete injury." *Id.* at 361. That independent concrete injury is present when a risk of future harm to the plaintiffs "materialized," or when the plaintiffs "were independently harmed by their exposure to the risk itself." *TransUnion*, 141 S. Ct. at 2211. While the "most

obvious" concrete harms are tangible ones, intangible harms can still be considered concrete. *Id.* at 2204. Van Vleck argues that he demonstrates concrete injury under both analyses. As discussed below, we disagree.

#### A.  Statutory Violation as Intangible Concrete Injury

Van Vleck contends that Ingber's procedural statutory violations alone suffice to establish concrete injury because they are closely related to the traditional common law torts of abuse of process, battery, trespass, invasion of privacy, and intrusion on seclusion. But Van Vleck first raised the theories of invasion of privacy and intrusion on seclusion in his motion to vacate pursuant to Rule 59(e), with no reason why he could not have presented these arguments earlier. *See Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) ("Rule 59(e) motions are 'aimed at reconsideration, not initial consideration.'" (quoting *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). A Rule 59(e) motion is not a vehicle for parties to present new legal arguments that could have been raised before entry of judgment. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.") And while Van Vleck raised his theory of trespass in his response to Ingber's motion to dismiss, he furnishes this theory on appeal with no argument, merely citing one apparently relevant case. We therefore consider it abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding an issue abandoned if a party does not present any argument respecting the issue in his brief). Declining to review the theories of invasion of privacy, intrusion on seclusion, and trespass here, we assess only the relationship between Van Vleck's injury and the common law torts of abuse of process and battery.

Van Vleck states that Ingber's violation of two provisions of the FDCPA resembles the common law tort of battery: § 1692d(1), which prohibits using or threatening to use violence or

other criminal means to harm the physical person, reputation or property of another person, and § 1692c(a)(1), which prohibits a debt collector from communicating with a consumer at a place known or which should be known as inconvenient to the consumer.

Under Michigan law, "[a] battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Lakin v. Rund*, 896 N.W.2d 76, 78 (Mich. Ct. App. 2016) (quoting *People v. Reeves*, 580 N.W.2d 433, 435 n.4 (Mich. 1998)). However, the tort of battery did not require proof of intent under the common law, *see id.*, so we do not consider that element "essential to liability" regarding Van Vleck's claimed injury. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,* 48 F.4th 1236, 1241 (11th Cir. 2022).

Comparing Van Vleck's alleged harm with the harm of battery reveals why it fails as "an adequate historical analogue." *Ward*, 9 F.4th at 362. Even viewing Van Vleck's complaint in a light most favorable to him, his allegations do not plausibly demonstrate nonconsensual, harmful, or offensive touching involved in the encounter. Van Vleck voluntarily—if reluctantly—opened the door to engage with the process server, and he voluntarily—if reluctantly—took the documents from the process server without protest. Even the process server's possible lack of masking could not be construed as harmful because the allegations describe that the encounter was outside; the process server did not speak to Van Vleck; Van Vleck himself was unmasked when he opened the door; and Van Vleck did not recall himself whether the unidentified man *was* masked or wearing gloves. Had Van Vleck claimed, for example, that the process server shoved the papers involuntarily into his hands without time for Van Vleck to protest or had spoken, shouted, or coughed near his face, then Van Vleck's alleged harm might bear a closer relationship to battery. But based on the complaint before us, the allegations do not bear a relationship to battery.

Van Vleck also challenges the district court's reliance on extrinsic evidence to conclude that his harm did not resemble common law battery. Yet the district court concluded that the harm was not similar to battery because Van Vleck failed to offer any authority on the issue demonstrating similarity. The district court's reference to postal carriers and Amazon workers delivering non-essential packages and mail during COVID-19 was not dispositive; that fact only "buttresse[d] the court's conclusion that Van Vleck has not come forward with any authority suggesting that in-person service of process during the pendency of the state of emergency and the stay-at-home orders is conduct akin to a common law battery." DE 47, Op. & Order, Page ID 801. The district court properly rejected Van Vleck's battery theory in its original dismissal, and the district court, reviewing Van Vleck's motion to vacate, did not abuse its discretion in finding so.

Van Vleck also argues that Ingber's violation of another statutory provision is closely related to the traditional common law tort of abuse of process. Here, he contends that the process server's delivery of a pre-printed form that failed to alert Van Vleck of the suspension of the deadline to answer a complaint violated § 1692e, which prohibits debt collectors from making "false, deceptive, or misleading representation . . . in connection with the collection of any debt." 15 U.S.C. § 1692e. Van Vleck argues that the service of process with this pre-printed form was a false, deceptive, and misleading statement meant to "deprive [Van Vleck] and others of their right to delay" the litigation, CA6 R. 19, Appellant Br., at 58, harming him in two ways: by conveying a false sense of urgency to answer the complaint during the pandemic, and by causing him to hire an attorney to represent him in court.

To sufficiently plead a common law abuse of process claim, a plaintiff must establish "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Jordan v. Nat'l City Bank*, No. 10-006749/50-NO, 2014 WL

1233718, at *13 (Mich. Ct. App. Mar. 25, 2014) (quoting *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981)). This means that the misconduct itself "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Friedman,* 312 N.W.2d at 594 n.18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)).

Ingber personally served Van Vleck when two pandemic regulations were in place: (1) the Michigan Supreme Court's requirement of electronic service of process to the extent possible, *see* Mich. Sup. Ct. AO 2020-9, and (2) the state-wide stay-at-home Executive Order only exempting workers essential to conducting minimum basic operations when in-person presence was "strictly necessary." EO 2020-42. That Ingber used personal service despite these requirements bears an initial resemblance to an abuse of process claim. But the resemblance stops there—Van Vleck does not plausibly allege that the process server acted with an ulterior purpose. That is, Van Vleck does not allege that the process server meant to deprive him of the knowledge of the suspended deadline.[3] Even viewing the allegations in Van Vleck's favor, Ingber used a form pre-printed by the SCAO indicating its routine 21-day deadline. That the SCAO form did not disclose the Michigan Supreme Court's suspension does not permit drawing an inference that Ingber's ulterior purpose was to obscure the suspension. Van Vleck's allegation therefore falls short of resembling the common law tort of abuse of process. Because the procedural injuries that Van Vleck asserts

---

[3] Van Vleck only raises the additional argument that Ingber may have wanted to take possession of his COVID-19 stimulus check in his motion to vacate the district court's order, so we do not consider it. *See Nat'l Ecological Found.*, 496 F.3d at 477; *c.f. Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 411 (6th Cir. 2013).

do not bear a close relationship to the traditional harms he posits, he does not demonstrate standing based on the statutory violations alone.

Relatedly, Van Vleck argues that, by evaluating the elements of the common law torts meant to resemble Van Vleck's asserted violations, the district court ruled on the merits of his case. However, the district court had to consider elements of the relevant common law torts to determine their similarity to Van Vleck's asserted violations. The district court did not address the merits of whether Ingber actually violated any provisions of the FDCPA. Nowhere did the district court go beyond a comparison of common law claims to a merits evaluation of the statutory claims. Thus, the district court did not rule on the merits of Van Vleck's complaint in its original dismissal, and it did not abuse its discretion in denying Van Vleck's motion to vacate on this basis.

### B. Independent Concrete Harm

Van Vleck next argues that his emotional and financial injuries are independently sufficient to constitute standing under Sixth Circuit and Supreme Court precedent. Indeed, he may still demonstrate that a concrete injury "flow[ed] from [the] statutory violation[.]" *Buchholz v. Meyer Njus Tanick, PA,* 946 F.3d 855, 862 (6th Cir. 2020).

Van Vleck asserts that the injury underlying the violations of §§ 1692d(1) and 1692c(a)(1) was emotional distress caused by personal service at his residence.[4] Relying on *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021), Van Vleck argues that this Circuit has recognized that extreme emotional distress establishes a cognizable injury in fact. Ingber responds that *Gerber* can be distinguished on the basis of its consideration of *extreme* emotional harm, rather than the

---

[4] Van Vleck's briefing includes numerous references to the allegations in his amended complaint, including his new allegations that his emotional injuries manifested into physical injuries. However, the allegations under consideration here are those included in his original complaint, not his proposed amended complaint.

emotional harm asserted by Van Vleck. Instead, it argues that *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) and *Buchholz* provide relevant guideposts for our analysis.

Based on the facts alleged in his complaint, Van Vleck's assertion of emotional distress is not a concrete injury. As Ingber describes, we have recognized that an allegation of extreme emotional distress can suffice as an injury-in-fact to confer Article III standing. *See Gerber,* 14 F.4th at 506 ("All in all, the congregants have standing to sue because they have credibly pleaded an injury—extreme emotional distress—that has stamped a plaintiff's ticket into court for centuries.") However, a "general allegation of emotional harm like anxiety or distress falls short of cognizable injury[.]" *Garland*, 999 F.3d at 440 (internal quotation marks omitted).

In *Garland*, the plaintiff brought a claim under the FDCPA alleging that he suffered from confusion and anxiety after a law firm sent him a debt-collection letter on its letterhead. *Id.* at 436. We determined that the plaintiff's claimed injuries were "not concrete enough to support standing." *Id.* at 437. To arrive there, we explained that "while a great deal of conduct may cause emotional harm," the concept of harm as an actionable injury depends on "a defendant's conduct and how that conduct impacts a plaintiff." *Id.* at 439 n.4 (citing *Spokeo*, 578 U.S. at 341). In that case, we found no injury-in-fact because the plaintiff's allegation of anxiety did not indicate any severity, and the plaintiff had not shown that Congress intended to make anxiety cognizable in the statutes at issue. *Id.* at 439–40. Likewise, here, we consider whether Van Vleck has alleged that the process server's conduct itself, in the context of the surrounding circumstances, gave rise to more than bare anxiety or distress. *Id.* at 439.

The complaint's allegations do not suffice for standing here. While the process server arrived at Van Vleck's residence during a stay-at-home order, the interaction solely occurred outside. Despite his immunocompromised condition, Van Vleck went to the door unmasked and

took the papers from the process server, and he admits that he does not recall whether the process server was wearing gloves or even masked, although his mother remembered that the process server was unmasked. Van Vleck does not allege any other conduct that would pair with his allegation of emotional distress to form a concrete injury.[5] Even in the context of the pandemic, the behavior appeared to be a routine service of process, albeit in conflict with court and state regulations in place at the time. This is a far cry from the conduct that the plaintiffs suffered in *Gerber,* where the protestors' targeted, persistent picketing of synagogue services with signs like "Resist Jewish Power" and "No More Holocaust Movies" caused plaintiffs "extreme emotional distress." 14 F.4th at 504. Indeed, personal service, even during the pandemic, conducted outdoors regarding a debt that was undisputedly owed[6] does not come close to Van Vleck's proffered analogy of the harm caused by a debt collector

> "load[ing] one bullet into her 44 Magnum, [spin]ning the cylinder, point[ing] the barrel at the debtor's temple, without touching him, and say[ing] "you've gotta ask yourself one question: 'Do I feel lucky?' When no response is provided by the debtor, she pulls the trigger."

CA6 R. 19, Appellant Br., at 42-43. We therefore conclude that Van Vleck has not sufficiently alleged a concrete injury of extreme emotional harm to confer Article III standing.

Next, we turn to Van Vleck's asserted financial injury resulting from the alleged violation of 15 U.S.C. § 1692e. Instead of concreteness, we resolve whether Van Vleck has standing to

---

[5] On appeal, Van Vleck no longer appears to argue that his emotional distress was rooted in a fear of contracting COVID-19, which the district court confirmed was insufficient for standing purposes as it was merely a fear of a future harm that was not "certainly impending." *See* DE 83, Op. & Order, Page ID 1238-39 (citing *Buccholz,* 946 F.3d at 865); *see also Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013).

[6] Van Vleck argues that the specific amount of debt he owed was in dispute, but that does not alter the fact that he owed a debt to Ingber's client.

assert this violation based on the requirement that an injury be traceable to the defendant's conduct. *Gerber*, 14 F.4th at 505. In other words, Ingber's actions must have a "causal connection" to Van Vleck's injury. *Id.* Van Vleck "cannot show harm simply by pointing to the cost of hiring counsel." *Ward*, 9 F.4th at 363. Van Vleck hired an attorney after receiving the state court clerk's issuance of an order to appear in person, seeking to avoid an in-person court appearance. The hiring of counsel did not "flow" from the service of process, then, but rather defense of the lawsuit and owing of debt. *See Buchholz*, 946 F.3d at 862, 866-67; *see also Ward,* 9 F.4th at 363 (citing *Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652, 670 (6th Cir. 2021) ("If the voluntarily incurred expenses of bringing a suit . . . could be used by themselves to show [concrete injury], this element of Article III standing would always be satisfied by any plaintiff who incurs legal expenses.")).

Because Van Vleck lacks standing to assert his claims, we see no reason to disturb the district court's dismissal of his claims without prejudice or its subsequent denial of Van Vleck's motion to vacate, motion to amend, or motion to certify a question to the Michigan Supreme Court. We decline to address any of the parties' procedural or other arguments and affirm.

III.

For the foregoing reasons, we affirm.